■ In the Matter of TAMI R. WINSTON, Respondent, v DENNIS L. GATES, Appellant. (And Another Related Proceeding.) [881 NYS2d 684]—

Stein, J. Appeal from an order of the Family Court of Broome County (Charnetsky, J.), entered January 14, 2008, which, among other things, granted petitioner's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter (born in 1996). The parties separated when the child was approximately two years old and the child has primarily resided with the mother since that time. In 2002, the parties consented to a modified order[1] awarding them joint legal custody of the child, with the child's primary residence to remain with the mother and an extensive visitation schedule with the father. In 2007, the mother commenced the first of these proceedings, seeking modification of the 2002 order to allow her to move to Florida with the child. The father then commenced a proceeding, requesting that the prior order be modified to place the child's primary residence with him. After a bench trial and a *Lincoln* hearing (at which the parties' counsel were present during the child's testimony), Family Court rendered an oral decision on the record, which was followed by a written order, continuing the child's primary residence with the mother, granting the mother's request for permission to relocate to Florida with the child and awarding the father extensive parenting time. The father now appeals and we affirm.

The relevant factors to be considered by a court in reviewing an application by a parent for permission to relocate a child's primary residence include, but are not limited to, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (*Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]). The court is free to consider and give appropriate weight to all relevant factors and, "[i]n the end, it is for the court to determine, based on all of the proof, whether it has been established by a preponderance of the evidence that a

---

1. It is unclear when the original order of custody was entered or what provisions it included, as such order is not contained in the record before us.

proposed relocation would serve the child's best interests" (*id.* at 741).

Here, the basis of the mother's application was that she had been diagnosed with a degenerative disc disease and was unable to continue to work. As a result, she had been forced to reside with relatives and with a former boyfriend, none of whom were able to accommodate her and the child on a long-term basis, necessitating that they move frequently. The mother's parents had offered to allow her and the child to reside with them indefinitely at their home in Florida and to provide for their basic living expenses, including room and board. The father alleged, in support of his application, that the mother's inability to provide for the child and his own ability to provide a stable and secure environment for the child warranted a change in the child's primary residential custody to him. While Family Court did not set forth a detailed analysis of its reasoning, our review of the record enables us to make the necessary findings which support a determination that the mother's relocation with the child—and, accordingly, the denial of the father's petition for modification of primary residential custody—was in the child's best interests (*see id.* at 741; *Matter of Bobroff v Farwell,* 57 AD3d 1284, 1285 [2008]; *Matter of Bessette v Pelton,* 29 AD3d 1085, 1087 [2006]; *Matter of Anson v Anson,* 20 AD3d 603, 604 [2005], *lv denied* 5 NY3d 711 [2005]).

The witnesses at trial included the mother, the mother's father (hereinafter the grandfather), the father and the father's current wife. The evidence established that both parents were active participants in raising the child and had a strong relationship with the child. However, the mother had been the child's primary caregiver for most of the child's life and the child had a stronger bond with her. For example, the record reflected that the child generally turned to the mother for advice and when she wanted someone in whom to confide. As Family Court observed, the mother, unlike the father, was knowledgeable with regard to the child's medical diagnosis of attention deficit disorder and special educational needs and addressed concerns relating to those needs. The mother also arranged for the child's involvement in various extracurricular activities (although the father's participation in those activities was also substantial). Significantly, the mother testified that she was unable to financially support herself or the child due to her medical condition and that she and the child had exhausted all available local resources.

The grandfather testified that the mother and child would be able to reside with him and his wife at no cost as long as neces-

sary. The evidence established that the mother and the child would each have their own bedrooms at the grandparents' residence—in contrast to the father's home, where the child was required to share a room with a stepsibling—and that the school the child would attend was located near their home. There was no evidence of any motive on the part of the mother, other than economic security and stability—let alone any improper motive—for her desire to relocate with the child. Both the mother and the grandfather indicated their willingness to provide the father with as much visitation with the child as practicable and to facilitate as much communication between the father and the child as the child desired.[2]

On the other hand, Family Court clearly considered the unquestionable fitness of the father, his close relationship with the child, the presence of members of the child's extended family in the area of the father's residence, and the child's positive adjustment to her school and established social relationships. However, there was also evidence that the father's household consisted of his wife and, at times, as many as four other children, leaving limited time for him to spend alone with the subject child. In addition, while the father testified that he would be willing to pay any tuition necessary to maintain the child in her current school,[3] he had not inquired as to the amount of such tuition and his modest income raises questions regarding the feasibility of his doing so, thus increasing the likelihood that the child would be required to change schools even if he were awarded primary residential custody. Finally, we discern no abuse of discretion in Family Court's determination to place substantial weight on the child's expressed desire to relocate to Florida with the mother, particularly in view of the Law Guardian's recommendation that the child's wishes be given such weight and the opportunity afforded to Family Court to observe the child and ascertain her level of maturity and ability to articulate her preferences (see Matter of Burch v Willard, 57 AD3d 1272, 1273 [2008]).

Notwithstanding the existence of evidence demonstrating that the father is a good parent, we conclude that a preponderance of the evidence exists to support Family Court's determination that relocation of the child with the mother was in the

2. Notably, to that end, Family Court's order provided for extensive visitation—six weeks during the summer, one week at Christmas, and one week during spring break—and required the mother to provide transportation for two of those visits, a cellular telephone that would allow the child and the father to make regular and frequent local telephone calls to one another, and e-mail communication.

3. His residence was in a different school district.

child's best interest. As such, and given Family Court's unique ability to make credibility determinations, we decline to disturb the court's determination (*see Matter of Tropea v Tropea*, 87 NY2d at 741; *Matter of Winn v Cutting*, 39 AD3d 1000, 1001 [2007]).

Mercure, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

