◼ LILIAN MATHIE, Appellant, v DOUGLAS MATHIE, Respondent. [884 NYS2d 433]—

In an action, inter alia, to set aside a stipulation of settlement which was incorporated but not merged into the parties' judgment of divorce, the plaintiff appeals from an order of the Supreme Court, Nassau County (Marber, J.), dated September 26, 2008, which, after a hearing, denied her application to relocate from Merrick, New York, to Marlboro, New Jersey, with the parties' minor child.

Ordered that on the Court's own motion, the notice of appeal

is deemed to be an application for leave to appeal, and leave to appeal is granted (*see* CPLR 5701 [a] [2]; [c]); and it is further,

Ordered that the order is reversed, on the facts and in the exercise of discretion, without costs or disbursements, the plaintiff's application to relocate from Merrick, New York, to Marlboro, New Jersey, with the parties' minor child is granted, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith; and it is further,

Ordered that pending further order of the Supreme Court, Nassau County, the defendant shall have visitation on alternate weekends from Friday at 7:00 P.M. until Sunday at 7:00 P.M., or other times as the parties may agree, with the plaintiff transporting the child to the paternal grandparents' home in Bellmore, New York, for drop-off and pick-up, or as the parties may otherwise agree; and it is further,

Ordered that pending further order of the Supreme Court, Nassau County, the defendant shall have a summer vacation visitation period commencing on Wednesday August 12, 2009 at 7:00 P.M. and ending on Sunday August 23, 2009 at 7:00 P.M., or as otherwise agreed to by the parties; the plaintiff shall drop off and pick up the child at the beginning and end of the summer vacation visitation at the paternal grandparents' home in Bellmore, New York; alternate weekend visitation, as herein above provided, shall resume on Friday September 11, 2009 at 7:00 P.M.

The parties were married in 1996 and had a son Ryan, born in 1998. The parties subsequently divorced in 2005. In settling the issues in their divorce action, the parties entered into a stipulation of settlement which, inter alia, provided for joint legal custody of Ryan, with physical custody to the plaintiff and visitation to the defendant. The stipulation of settlement also contained a provision that the plaintiff had to reside in Nassau County or Suffolk County so long as the defendant resided in one of those counties.

A visitation schedule was annexed to the stipulation of settlement. The visitation schedule provided for, at a minimum, alternate weekends, except in October and November, during which months visitation was to occur every Sunday to accommodate the defendant's hunting season schedule. The parties expressly agreed that the schedule could be modified and made "more formal" at the request of either of them. While the visitation schedule provided for alternate weekend visitation, the defendant only had additional visitation every Christmas Day, as well as the days before and after it, and Easter Sunday and

alternating Thanksgiving Day, July 4th holiday, and New Year's Day. Notably, the defendant agreed to a stipulation that did not provide visitation during any three-day weekends, school recesses, or the summer beyond his alternating weekend schedule. Notwithstanding the visitation schedule, the defendant attended most of Ryan's little league games and most of Ryan's soccer games, and allegedly tried to attend school activities and conferences.

As a result of the defendant not regularly seeing or communicating with Ryan in 2005, Ryan's school work deteriorated and he became depressed. The parties met and agreed that Ryan would see a therapist. The parties alternated bringing Ryan to the therapist on Thursday evenings for about four months. In addition, the defendant started to see Ryan on Monday evenings as well as on Friday evenings when he did not have scheduled visitation on that weekend. By the summer of 2006, most Monday visits with Ryan had been cancelled by the defendant.

In 2006 the plaintiff remarried and informed the defendant that she wished to move with Ryan to live with her new husband in Marlboro, New Jersey. The defendant objected, citing the stipulation of settlement. The plaintiff commenced this action to set aside the stipulation of settlement on the grounds that it was unconscionable and unenforceable, and to allow her to relocate to New Jersey with Ryan. The defendant answered the complaint and interposed a counterclaim for an award of an attorney's fee. Significantly, the defendant did not seek custody of Ryan as an alternative to the plaintiff's relocation application.

The Supreme Court, after a hearing, denied the plaintiff's application to relocate. The plaintiff appeals.

When parties enter into stipulations resolving custody issues, those stipulations "will not be modified unless there is a sufficient change in circumstances since the time of the stipulation, and unless modification of the custody arrangement is in the best interests of the children" (*Matter of Said v Said*, 61 AD3d 879, 880 [2009]). One factor to be considered in determining whether a modification based upon a change in circumstances is appropriate is the impact upon the relationship of the noncustodial parent and the child (*id.*).

In determining the merits of a relocation application, the court is called upon to weigh many significant competing factors (*see Matter of Tropea v Tropea*, 87 NY2d 727 [1996]; *Matter of Wisloh-Silverman v Dono*, 39 AD3d 555, 556-557 [2007]; *Matter of Confort v Nicolai*, 309 AD3d 861, 862 [2003]). "While it is sometimes essential for the custodial parent to relocate for economic or personal reasons, the law requires that the interests

which might justify such a relocation by the custodial parent be balanced against the noncustodial parent's fundamental human right to frequent visitation and, most significantly, by the best interests of the child[ ]" (*Rybicki v Rybicki*, 176 AD2d 867, 869-870 [1991] [citation omitted]).

This Court, in *Matter of Wisloh-Silverman v Dono* (39 AD3d 555 [2007]), held that the factors enumerated in *Matter of Tropea v Tropea* (87 NY2d at 741) to be considered on an application for relocation by a custodial parent "include, but are certainly not limited to each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements" (*Matter of Wisloh-Silverman*, 39 AD3d at 557; *see Aziz v Aziz*, 8 AD3d 596 [2004]; *Amato v Amato*, 202 AD2d 458, 459 [1994]).

Upon a review of the record herein, we find that the plaintiff established by a preponderance of the evidence that the child's best interests would be served by permitting the relocation (*see Tornheim v Tornheim*, 28 AD3d 535, 536 [2006]; *Matter of Reilly v Schmidt*, 295 AD2d 436 [2002]).

The plaintiff has remarried and reasonably wishes to reside with her new husband and his family (*see Daghir v Daghir*, 82 AD2d 191, 194-195 [1981], *affd* 56 NY2d 938 [1982]; *Hemphill v Hemphill*, 169 AD2d 29, 32 [1991]). The defendant objects, arguing that he will be unable to participate in weekday school and extracurricular activities as his son will be significantly farther from his home, which is located on the eastern end of the North Fork of Long Island, 79 miles from where the plaintiff and Ryan currently reside and where the parties last resided together.

Based upon the evidence and the forensic psychiatrist's report, both the plaintiff and the defendant share equally strong relationships with their son. As evidenced by the forensic psychiatrist's report, Ryan favors the move to New Jersey so long as he continues to spend the same amount of time with the defendant.

The current living arrangement, as directed by the Supreme Court, is untenable. Under the status quo, the plaintiff and Ryan reside in Merrick during the week. The plaintiff's new husband spends a night or two each week in Merrick. When there is no scheduled visitation with the defendant, the plaintiff

and Ryan live in New Jersey. If allowed to continue as presently ordered, Ryan will have three homes and no real sense of permanency in any of them. While traveling between Merrick and the defendant's home in Greenport is difficult, that is the norm established by the parties. Although adding the travel from the plaintiff's new husband's home in New Jersey, 59 miles, is an additional burden on Ryan, it is more consistent with his best interest than maintaining the tripartite, disjointed existence which is the status quo since the plaintiff's remarriage.

The Supreme Court's neutral forensic psychiatrist opined that Ryan's life would be emotionally enhanced by the relocation because he would be able to spend at least alternating weekends in the home in which he would reside during the week. In addition, Ryan would benefit from an extensive family support system in New Jersey, specifically, the plaintiff's husband and his children, the plaintiff's brother-in-law and his children, and the plaintiff's cousin and her children.

While the loss of weekday contact with the defendant is neither trivial nor insignificant (see Matter of Wisloh-Silverman v Dono, 39 AD3d at 557), a visitation schedule could be devised that would allow for the continuation of the meaningful relationship between the defendant and his son (see Matter of Tropea v Tropea, 87 NY2d at 742; Matter of Wisloh-Silverman v Dono, 39 AD3d at 557; Thomas v Thomas, 271 AD2d 726, 727 [2000]). Notably, the plaintiff has proposed a liberal visitation schedule. Such proposal would substantially expand the defendant's visitation under the current stipulation, to include alternating school recesses and long weekends as well as summer vacations. Indeed, the amount of quality time the defendant would spend with Ryan would actually increase notwithstanding the loss of the weekday evening visits (see Matter of Winston v Gates, 64 AD3d 815, 817-819 [3d Dept 2009]). It would also require the plaintiff to drive Ryan to and from Long Island to facilitate the visitation with the defendant and cause the defendant no additional travel burden (see Blundell v Blundell, 150 AD2d 321, 323-324 [1989] [where this Court held that relocation to New Hampshire from New York would not curtail the visitation rights of the noncustodial parent when the custodial parent offered to drive the children to a midway point to promote visitation]; see also Hemphill v Hemphill, 169 AD2d 29 [1991] [the husband's application for custody or to enjoin the wife's relocation to England, where her new husband was reassigned, was denied]). Under these circumstances, the Supreme Court should have granted the plaintiff's application to relocate from Merrick, New York, to Marlboro, New Jersey, with the parties' child.

Therefore, we remit the matter to the Supreme Court, Nassau County, for further proceedings to establish a post relocation visitation schedule (*see Matter of Wisloh-Silverman v Dono*, 39 AD3d at 557; *Aziz v Aziz*, 8 AD3d at 597). In so doing, we are not unmindful of the cost of visitation which the defendant would bear if any visitation were to take place in New Jersey. Thus, on remittal, the Supreme Court also should consider the allocation of such cost or modification of child support as an element of the modification of the stipulation of settlement (*see Martinez v Konczewski*, 85 AD2d 717 [1981]). Rivera, J.P., Florio, Dickerson and Austin, JJ., concur.