■ In the Matter of MICHELLE C. HISSAM, Appellant, v MATTHEW P. MANCINI, Respondent. (And Another Related Proceeding.) [916 NYS2d 248]—

Lahtinen, J. Appeal from an order of the Family Court of St. Lawrence County (Potter, J.), entered July 2, 2009, which, among other things, granted respondent's cross application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) have a son (born in 1998). We previously affirmed a November 2005 order of Family Court which granted the father, who resided in Pennsylvania, primary physical custody with liberal parenting time to the mother, who resided in St. Lawrence County (*Matter of Hissam v Mackin*, 41 AD3d 955 [2007], *lv denied* 9 NY3d 809 [2007]). In January 2009, the mother commenced, without counsel, the current proceeding seeking modification to grant her primary physical custody and an order finding the father in contempt for allegedly failing to deliver the son for visitation at court-ordered times. The father, among other things, cross-petitioned for modification permitting him to move with the child to Thailand.

The mother subsequently was assigned counsel and she moved to dismiss all proceedings upon the ground that Family Court lacked jurisdiction or, alternatively, that New York was an inconvenient forum. Family Court denied the motion. After several days of hearings, Family Court, among other things, granted the father permission to relocate to Thailand provided that he pay the cost of a webcam for the mother, post $10,000 bond or $5,000 cash, and pay all transportation costs for the son's visitation each summer with the mother (*M.H. v M.M.*, 24 Misc 3d

1213[A], 2009 NY Slip Op 51438[U] [2009]). The court further conditioned the mother's parenting time upon her posting a $10,000 bond or $5,000 cash to indemnify the father in the event that he incurred costs in enforcing the order. The mother's contempt application was dismissed. The mother appeals.

The mother contends that Family Court did not have jurisdiction under Domestic Relations Law § 76-a and that it was an inconvenient forum pursuant to Domestic Relations Law § 76-f. Considering first the jurisdictional issue, where, as here, a court has made a child custody determination, the court continues to have jurisdiction until it "determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships" (Domestic Relations Law § 76-a [1] [a]; *see Matter of Eisner v Eisner*, 44 AD3d 1111, 1113 [2007], *lv denied* 9 NY3d 816 [2007]). The mother has lived continuously in this state since before 2005. Her parenting time took place in this state and, under the 2005 order, included, among other things, three weekends every two months (including long weekends) as well as various holidays and much of the summer. Events pertinent to the petitions occurred when the child was in this state. There was ample evidence of a significant connection by the child with this state for Family Court to retain jurisdiction (*see Matter of Sutton v Sutton*, 74 AD3d 1838, 1839 [2010]).

The issue of inconvenient forum dismissal is addressed to Family Court's discretion after consideration of the statutory factors (*see* Domestic Relations Law § 76-f; *Matter of Jun Cao v Ping Zhao*, 2 AD3d 1203, 1204 [2003], *lv denied* 1 NY3d 509 [2004]). Family Court noted, among other factors, that it was very familiar with the facts and issues as a result of conducting the prior custody hearings concerning the son, transferring the matter would result in further delay, and the father's financial circumstances and ability to travel were superior to those of the mother. Moreover, the father, who was from Pennsylvania, did not object to Family Court's jurisdiction, and relevant evidence involved incidents in both this state and Pennsylvania. We are unpersuaded that Family Court abused its discretion in retaining jurisdiction.

Family Court's decision allowing the child to relocate to Thailand is also challenged by the mother. "A party seeking relocation of his or her child must establish, by a preponderance of the evidence, that the relocation would be in the child's best interests" (*Matter of Solomon v Long*, 68 AD3d 1467, 1469

[2009] [citations omitted]; *see Matter of Tropea v Tropea*, 87 NY2d 727, 741 [1996]). "The relevant factors to be considered by a court in reviewing an application by a parent for permission to relocate a child's primary residence include, but are not limited to, 'each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements' " (*Matter of Winston v Gates*, 64 AD3d 815, 816 [2009], quoting *Matter of Tropea v Tropea*, 87 NY2d at 740-741). Where Family Court is faced with credibility issues in assessing the evidence presented, we typically accord deference to its resolution of those issues (*see Matter of Hills v Madrid*, 57 AD3d 1175, 1176 [2008]). Family Court's determination will be upheld if supported by a sound and substantial basis in the record (*see Matter of Herman v Villafane*, 9 AD3d 525, 526 [2004]).

Numerous reasons were set forth by Family Court supporting its determination that it was in the child's best interests to permit the move. The court credited the father's explanation for moving of desiring to keep his family intact. His current spouse had been offered a transfer by the French corporation for which she worked, with lucrative pay and benefits. While recognizing that the move would severely restrict the mother's parenting time, Family Court observed that such restriction might be positive for the child since the mother (and her parents) had frequently engaged in behavior that had a harmful effect on the child. This included repeated derogatory comments about the father, attempts to manipulate the child to say negative things about the father, and the frequent use of profanity around the child. In addition, the mother exercised poor judgment in some of the things to which she exposed the child, including showing him a photograph of a fetus she lost in a miscarriage. This severely upset the child and resulted in him returning to psychological counseling. There was evidence, found credible by Family Court, that after visits with the mother (and her parents) the child's emotional condition was often impaired. The mother's conduct resulted in Family Court imposing a supervision requirement for visitation, and thereafter the mother failed to attend many supervised visits. The court noted that the mother often opted to act as a victim herself, rather than make reasonable efforts to have visitation with the child.

Family Court found that the father has provided a stable home and the mother has failed to do so. The mother currently resides with a paramour who is not permitted to have contact with her children. The court further found that the child's intellectual and emotional development was enhanced by the father, while the mother's conduct was often a detriment to the child. The child had visited Thailand with the father to view his potential future home and school, and he found both desirable. Family Court noted many benefits to the child in the move, including exposure to a different culture and enhanced educational opportunities. The attorney for the child advocated in favor of permitting the father to move with the child. We accept Family Court's assessment of credibility and find that its determination has a sound and substantial basis in the record.

We agree with the mother that there was not a proper foundation established for admitting records of the child's psychologist as business records (see Matter of Shane MM. v Family & Children Servs., 280 AD2d 699, 701-702 [2001]). However, we are unpersuaded to reverse on such ground since there was sufficient other evidence in the record supporting the germane findings of Family Court and its determination (see id. at 702).

There is merit to the contention, advanced by both the attorney for the child and the mother, that it was error to condition the mother's visitation on posting a $10,000 bond or $5,000 cash. This imposes upon the mother, who qualified for assigned counsel, an undue burden that is not supported by the record and may serve to totally bar visitation (see Matter of Horike v Freedman, 37 AD3d 978, 979-980 [2007]). The condition must be stricken. The father's argument that the requirement should also be stricken as to him is not before us since he did not appeal from Family Court's order and, in any event, his situation is significantly different from the mother's.

The mother's contempt application, which failed to include the required statutory notice, was properly dismissed (see Van Nostrand v Town of Denning, Ulster County, 203 AD2d 687, 687 [1994]; Mente v Wenzel, 192 AD2d 862, 863 [1993], appeal dismissed and lv denied 82 NY2d 843 [1993]). Finally, as the record reveals that the mother received meaningful representation, we find unavailing her contention that she did not receive the effective assistance of counsel (see Matter of Elizabeth HH. v Richard II., 75 AD3d 670, 670-671 [2010]).

Peters, J.P., Spain, Rose and McCarthy, JJ., concur. Ordered that the order is modified, on the facts, without costs, by striking the provision requiring petitioner to post a $10,000 bond or $5,000 cash prior to exercising visitation, and, as so modified, affirmed.