Mercure, J.P
Cross appeals from an order of the Family Court *1245 of Chenango County (Sullivan, J.), entered February 3, 2012, which, among other things, granted petitioner’s application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the married, but separated, parents of one child (born in 2008). Pursuant to a May 2011 stipulation and order upon consent, the father had sole custody of the child and the mother was permitted approximately 120 days per year of visitation to be supervised by her parents. In September 2011, the father commenced this proceeding seeking permission to relocate to Illinois with the child. The mother cross-petitioned for modification of the prior order, requesting joint custody and unsupervised visitation. Following a fact-finding hearing, Family Court granted the father permission to relocate, and awarded the mother joint custody and approximately 100 days per year of unsupervised visitation in New York, as well as “reasonable visitation contact” with the child in Illinois. The father was directed to bear the cost of transporting the child to New York except during the months of July and August. The mother now appeals, and the father cross-appeals.*
We affirm. A party seeking to relocate bears the burden of establishing by a preponderance of the evidence that the proposed move would be in the child’s best interests (see Matter of Feathers v Feathers, 95 AD3d 1622, 1623 [2012]; Matter of Williams v Williams, 90 AD3d 1343, 1344 [2011]). In determining whether relocation is appropriate, the totality of the circumstances must be considered, including “each parent’s reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child’s future contact with the noncustodial parent, the degree to which the custodial parent’s and child’s life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements” (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]). Inasmuch as “[t]he weighing of these various factors requires an evaluation of the testimony, character and sincerity of all the parties involved” (Eschbach v Eschbach, 56 NY2d 167, 173 [1982]), Family Court’s credibility determina *1246 tions are entitled to deference and its decision will be upheld if supported by a sound and substantial basis in the record (see e.g. Matter of Feathers v Feathers, 95 AD3d at 1623).
Here, the father testified that, although the move was not economically necessary at present, he was concerned about his job stability because his employer had recently made multiple layoffs, restructured the company and changed his position title. He further indicated that he had investigated local jobs within his area of expertise, but found that they would require him to either spend 25% of his time traveling or take a reduced salary. He sought to move after he was offered a job with a salary of $90,000, an approximately 10% increase over his current salary, and he gave detailed testimony regarding the opportunities provided by the new position, including bonus incentives. In addition, the new location offered a reduced cost of living, and the father would initially live with the paternal grandmother, who— along with the father’s sister — would provide childcare at no cost for the child, further reducing the father’s expenses. The father, who formerly had sole custody of the child and was primarily responsible for child-care arrangements and financial support of the child, also described future educational opportunities for the child in Illinois and his plan to use the savings in child-care and living costs to enroll the child in preschool. Although the move would distance the child from his maternal extended family in New York and result in reduced visitation with the mother, he would be raised in close proximity to his cousins, in addition to receiving care from the paternal grandmother and father’s sister.
In contrast, while the record demonstrates that the mother and the maternal grandparents also have a close, affectionate bond with the child, the mother has struggled with a generalized anxiety disorder and alcohol abuse, which led to the requirement that her visits with the child be supervised by the maternal grandparents and detracted from the quality of her relationship with the child. For example, the mother has been less involved in the child’s care — she has never interacted with the child’s daycare personnel because she did not feel comfortable doing so, and admitted that on week nights she left the child at her parents’ house in order to go home and take care of her dogs. Moreover, although the maternal grandparents are an important resource for the child — having supervised visitation and cared for the child overnight and during the day when the mother was working — the mother and maternal grandmother had a relationship that was “stormy.” It was undisputed, for example, that the mother called the police for assistance as a *1247 result of a confrontation with the maternal grandmother, after which the two did not speak for three weeks. Finally, we note that Family Court concluded that the mother had lied under oath regarding her continuation of a romantic relationship with an individual who was not permitted to have contact with the child, and the court attached very little credibility to her testimony.
Given the totality of the circumstances, including the economic enhancement for the child and greater job stability for the father that would result from the move, as well as the child’s opportunity to bond with his paternal extended family while still enjoying regular and meaningful contact during long visitation periods with the mother, we conclude that a sound and substantial basis existed for Family Court’s determination that the proposed relocation would be in the child’s best interests (see Matter of Vargas v Dixon, 78 AD3d 1431, 1432-1433 [2010]; Matter of Winston v Gates, 64 AD3d 815, 817-819 [2009]; Matter of Winn v Cutting, 39 AD3d 1000, 1001-1002 [2007]; cf. Matter of Munson v Fanning, 84 AD3d 1483, 1484-1485 [2011]).
Lahtinen, Malone Jr., Stein and Egan Jr., JJ, concur. Ordered that the order is affirmed, without costs.

 The father has advanced no arguments in support of his cross appeal and seeks only affirmance of Family Court’s order. Therefore, the cross appeal is deemed abandoned (see Matter of Hirsch v Schwartz, 93 AD3d 1114, 1115 n 2 [2012]).