## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  July 9, 2015                517073
_____

In the Matter of REBECCA HH.,
                    Respondent,

         v                              MEMORANDUM AND ORDER

GERALD HH.,
                    Appellant.

(And Other Related Proceedings.)
_____

Calendar Date:  June 1, 2015

Before:  Lahtinen, J.P., Lynch, Devine and Clark, JJ.

_____

        Abbie Goldbas, Utica, for appellant.

        Christopher A. Pogson, Binghamton, attorney for the child.

_____

Lynch, J.

        Appeal from an order of the Family Court of Broome County
(Charnetsky, J.), entered March 15, 2013, which, among other
things, granted petitioner's application, in a proceeding
pursuant to Family Ct Act article 6, to modify a prior order of
custody.

        Petitioner (hereinafter the mother) and respondent
(hereinafter the father) are the parents of a child (born in
2000).  The parties, who resided in the City of Binghamton,
Broome County, shared joint custody of the child pursuant to a
November 2010 custody order.  Specifically, the mother had
primary physical custody while the father had nearly equal,
regular weekly parenting time.  In October 2011, the mother
commenced this modification proceeding seeking permission to

relocate the child from Binghamton to Charlotte, North Carolina. The father opposed the petition and, among other things, cross-petitioned for sole custody of the child.

The fact-finding hearing began in July 2012. Prior to its conclusion, but after Family Court conducted a Lincoln hearing, the mother, with the support of the attorney for the child, sought permission to allow her to move the child to North Carolina on a temporary basis during the pendency of the proceeding. Family Court granted the mother's request and, among other things, directed that the father have phone or Skype contact with the child every evening at 7:00 p.m. The fact-finding hearing continued over a number of days before concluding in February 2013. After hearing all the evidence, Family Court granted the mother's petition to relocate, and the father now appeals.[1]

As she was the party seeking to relocate, the mother was obligated to establish by a preponderance of the credible evidence that relocation was in the child's best interests (see Matter of Tropea v Tropea, 87 NY2d 727, 741 [1996]; Matter of Cook-Lynch v Valk, 126 AD3d 1062, 1063 [2015]; Matter of Pizzo v Pizzo, 94 AD3d 1351, 1352 [2012]). Prior to rendering its determination, Family Court was obligated to consider such factors as "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the . . . parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visiting arrangements" (Matter of Tropea v Tropea, 87 NY2d at 740-741). Because we recognize that Family Court was in the best position to make factual findings and assess witnesses' credibility, we will not disturb its determination as long as it is supported by a sound and substantial basis in the record (see Matter of

_____

[1] The mother has not filed a brief or contacted the Court with regard to her position on this appeal.

Spaulding v Stewart, 124 AD3d 1111, 1112 [2015], lv denied 25
NY3d 903 [2015]; Matter of Weber v Weber, 100 AD3d 1244, 1245-
1246 [2012]; Matter of Pizzo v Pizzo, 94 AD3d at 1352).

Here, the mother's testimony established that she had a
poor relationship with the father and they were unable to
communicate effectively for the benefit of the child.  She
explained that she wanted to relocate to North Carolina so that
she and the child could live in the home that she owns with her
husband (hereinafter the stepfather), who she married in 2011.
At the time of the hearing, the stepfather was working in North
Carolina as a mental health therapist, and the mother and the
child were traveling to see him approximately once each month.
The mother explained that the child would experience a financial
benefit if they relocated because she would not have to maintain
two households and the cost of living was higher in Binghamton
than in North Carolina.  Further, the mother explained that,
despite her efforts, she had been unable to find a job in the
Binghamton area and she had received an offer for a job that was
being held for her in North Carolina.  The mother also testified
that, after the child was allowed to relocate pursuant to the
temporary order, his grades were good, with the exception of
math, and he was not experiencing any behavioral issues at his
new school.

For his part, the father testified on his own behalf and
also presented the testimony of the child's paternal grandfather,
the child's stepmother, the father's pastor, and the child's
basketball coach.  Their testimony established that the child was
part of a large extended family on his father's side, that the
child regularly attended church and participated in its choir and
softball league, and that the father was involved in and
supported the child's athletic activities by volunteering as a
coach and referee.  The stepmother testified that, after the
child was allowed to temporarily relocate to North Carolina, she
believed that the child had become "rude" and disrespectful to
the father.  Similarly, the father testified that he believed
that the mother was not encouraging the child to contact him each
day.  According to the father, his relationship with the child
would continue to deteriorate if the mother were permitted to
permanently relocate to North Carolina, the child would not be

able to participate in sporting activities as much if he were not involved,[2] and the child would not be able to spend time with his extended family located in the Binghamton area.

In addition to the parents, Family Court also heard testimony from the child's elementary school counselor. She testified that she met with the child occasionally while he was in first through fifth grades due to certain behavioral issues. After the father complained, it was agreed that she would not see the child unless she received a request from the parents or the child came to her directly. With respect to the father's complaints, the school counselor recalled that she once had to end a meeting with the father after he became hostile with her, and she once observed the father being asked to leave school grounds as a result of his behavior towards the school principal. The school counselor testified that she referred the child to a social worker after he reported to her that he was feeling suicidal. That licensed social worker, who met with the child for approximately two years, testified that the child expressed a desire to relocate with the mother and reported that he was "fearful" of the father. Finally, Family Court heard from a child protective caseworker employed by the Broome County Department of Social Services, who testified that she had received a report in January 2012 that the father had physically assaulted the child and she interviewed the mother, father, child and school staff members with respect to this report.

Each party testified that they enjoyed a good relationship with the child. As to the relationship between the father and the child, Family Court determined that the caseworker's testimony with regard to the incident leading to the January 2012 report was credible. Still, the record confirms that the father blames the mother for his worsening relationship with the child and does not have any insight into the ways his behavior might have contributed to their relationship. Pursuant to Family Court's March 2013 order, the father has less time with the child

_____

[2] The father reasoned that, in general, a child's access to recreational sports is enhanced if the parent is involved with the coaching staff.

during the school year to be sure, but, in addition to telephone calls and Skype contact, he has ample and extended time with the child during the summer months and school vacations and can visit each month in North Carolina if he wishes.  In our view, giving the requisite deference to Family Court's credibility assessments, there was a sound and substantial basis in the record for its finding that it was in the child's best interests to allow the mother to relocate to North Carolina (see Matter of Spaulding v Stewart, 124 AD3d at 1113; Matter of Weber v Weber, 100 AD3d at 1247).

The father's remaining arguments, including the argument that Family Court abused its discretion by allowing the child to relocate temporarily, have been considered and found to be without merit.

Lahtinen, J.P., Devine and Clark, JJ., concur.


ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court