Matter of Lynk v Ehrenreich (2018 NY Slip Op 01226)





Matter of Lynk v Ehrenreich


2018 NY Slip Op 01226


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

523508

[*1]In the Matter of DARRIN M. LYNK, Respondent,
v
LISA M. EHRENREICH, Appellant. (And Another Related Proceeding.)

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Trosset Group Attorneys, Cooperstown (Michael E. Trosset of counsel), for respondent.
Christopher Hammond, Cooperstown, attorney for the child.




MEMORANDUM AND ORDER
McCarthy
, J.P.
Appeal from an order of the Family Court of Otsego County (Burns, J.), entered July 25, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the parties' child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a daughter (born in 2004; hereinafter the child). The father subsequently had a son
(born in 2007) with Sadie Hotaling. In 2010, this Court provided the parties with joint legal custody of the child, with primary physical custody to the father and visitation to the mother two out of every three weekends, after school each Wednesday evening and the majority of summer break (Ehrenreich v Lynk, 74 AD3d 1387 [2010]). In 2016, the father filed a petition seeking permission to relocate to Arizona with the child on the grounds that there were better job prospects for him in Arizona and that his long-term domestic partner, Lisa Beers, wished to be closer to her parents due to her father's health. Following a hearing, Family Court held that it was in the child's best interests to move to Arizona and provided the mother with visitation of, among other things, three phone calls or face-to-face visual communications per week, unlimited email and text messages, visitation in New York from July 15 to August 15 and visitation in New [*2]York for five days during the child's winter break [FN1]. The mother appeals.
"A party seeking to relocate bears the burden of establishing by a preponderance of the evidence that the proposed move would be in the child's best interests" (Matter of Weber v Weber, 100 AD3d 1244, 1245 [2012]; see Matter of Hempstead v Hyde, 144 AD3d 1438, 1439 [2016]). "In determining whether relocation is appropriate, the totality of the circumstances must be considered, including 'each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements'" (Matter of Weber v Weber, 100 AD3d at 1245, quoting Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]). Because Family Court "is in a superior position to assess witness credibility and make findings of fact," this Court gives deference and will not disturb a relocation decision that is supported by a sound and substantial basis in the record (Matter of Southammavong v Sisen, 141 AD3d 905, 906 [2016]; see Matter of Hempstead v Hyde, 144 AD3d at 1439).
Family Court's finding that relocation was in the child's best interests is supported by a sound and substantial basis in the record. For the majority of her life, the child had lived primarily with the father and her half brother. For the prior six years, the three of them had lived together with Beers as a family unit. Beers regularly cared for the child and they had a close relationship. The father and Beers attended all of the child's games. He provided the mother with the game schedule, and she attended some. The father handled the child's medical appointments and school events. The mother had moved five times and lived an hour away from the child. Apparently due to the distance, the mother chose not to exercise her Wednesday evening visitation with the child. The mother also acknowledged that she had voluntarily reduced her visitation to every other weekend, rather than two out of every three weekends, until approximately the time that the petition was filed. The child had witnessed at least the aftermath of an incident of domestic violence between the mother and her boyfriend; although this incident scared the child, the mother testified that even though the child saw her bloodied and knew what happened, the child did not personally see the incident and was not affected by it.
One reason for the move was the father's desire to locate his family near Beers' parents to care for her father, who had suffered a stroke. When they lived in New York, Beers' parents had routinely attended the child's games. They had taken care of the child regularly, including throughout the summer, and the child considered them like grandparents. Although the move would decrease the contact between the child and her maternal half siblings, grandparents, aunt and uncle, it would increase the contact with these surrogate grandparents. The child was very close to her paternal half brother, and Family Court's order permitted her to continue living with him. The father offered to provide financial assistance if the mother wished to relocate and to fly her to Arizona each year for a visit. Furthermore, while not determinative, the child expressed her desire to move with the father to Arizona. Despite finding that the move would have a negative impact on the quality and quantity of the child's contact with the mother, the court [*3]determined that the relationship could be preserved through frequent technological communications and took into consideration that the mother previously failed to exercise all of her visitation rights.
Regarding his employment as a motorcycle service technician, the father testified that his prior employer went out of business. Although he had been employed at his current job for six years, the employer had lost clients and product lines, the father's hours had been reduced with a resultant decrease in salary, and he feared being laid off due to the loss of work. He testified that he had been offered employment at a large facility in Arizona, the state where he had received his trade schooling, with the offer contingent only on a drug test and criminal background check. Another witness testified, based on his knowledge from trade magazines, that the field of motorcycle maintenance was shrinking in New York but growing in Arizona.
The mother complains that the father did not conduct a job search in New York and was unwilling to consider a position that was available. However, the father testified that he had talked to different dealerships, none of which were hiring technicians, and the position that the mother's attorney suggested was located more than an hour from the father's house. Beers testified that she would be able to transfer to one of her company's Arizona offices with no change in pay. The father testified that he would have job security in Arizona, and Family Court credited his testimony concerning his job prospects and economic security there (compare Matter of Michelle V. v Brandon V., 110 AD3d 1319, 1325 [2013]; Matter of Mehaffy v Mehaffy, 23 AD3d 935, 937 [2005]). The court found that the father provided for all of the child's physical, educational, developmental and emotional needs and gave her stability in her home life and, overall, the child's emotional well-being would be significantly enhanced by allowing her nontraditional nuclear family to remain intact. These findings are supported by a sound and substantial basis in the record (see Matter of Hempstead v Hyde, 144 AD3d at 1441; Matter of Rebecca HH. v Gerald HH., 130 AD3d 1158, 1161 [2015]).
Finally, the mother seeks a modification of the provision in Family Court's order providing her with summer visitation in New York from July 15 to August 15 each year. The parties acknowledge that these dates are unworkable given that schools in Arizona end their summer break in late July. Based on this conflict between the court's order and the child's school schedule, we modify the mother's visitation over summer break to be from June 15 to July 15.
Devine, Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is modified, on the facts, without costs, by amending respondent's summer visitation to be from June 15 to July 15, and, as so modified, affirmed.



Footnotes

Footnote 1: The same hearing addressed the father's petition against Hotaling seeking permission to relocate with their son. Family Court determined that it was also in the best interests of the father's son to move, but that portion of the order has not been appealed.