Matter of Nathaniel v Mauvais (2025 NY Slip Op 00223)

Matter of Nathaniel v Mauvais

2025 NY Slip Op 00223

Decided on January 15, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 15, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
ROBERT J. MILLER
LOURDES M. VENTURA
PHILLIP HOM, JJ.

2023-01140
 (Docket Nos. V-9610-11/17D, V-17623-16/17D)

[*1]In the Matter of Robin Nathaniel, respondent,
v
Shana Mauvais, appellant. Christian P. Myrill, Jamaica, NY, for appellant.

The Law Firm of Liou & Maisonet, PLLC, New York, NY (Dimitri Maisonet of counsel), for respondent.
Liberty Aldrich, Brooklyn, NY (Leah Edmunds and Janet Neustaetter of counsel), attorney for the child.

DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Kings County (Denise M. Valme-Lundy, Ct. Atty. Ref.), dated January 11, 2023. The order, insofar as appealed from, after a hearing, granted the father's petition to modify an order of the same court dated October 4, 2016, entered upon the parties' consent, so as to award him sole legal custody of the parties' child, granted that branch of the father's application which was, in effect, to modify the order dated October 4, 2016, so as to permit him to relocate with the child to Georgia, awarded the mother parental access with the child only to the extent of allowing her to communicate with him through written letters and packages by regular mail once per week, and conditioned any future modification of the mother's parental access with the child, in effect, upon her enrollment in mental health treatment and her resulting improvement in mental status, emotional regulation, psychological functioning, and empathy for the child.
ORDERED that the order dated January 11, 2023, is modified, on the law, by deleting the provision thereof conditioning any future modification of the mother's parental access with the child, in effect, upon her enrollment in mental health treatment and her resulting improvement in mental status, emotional regulation, psychological functioning, and empathy for the child; as so modified, the order dated January 11, 2023, is affirmed insofar as appealed from, without costs or disbursements.
The mother and the father, who were never married to each other, have one child together. In an order dated October 4, 2016, entered upon the parties' consent (hereinafter the 2016 order), the Family Court, inter alia, awarded the parties joint legal custody of the child, with sole residential custody to the father and certain parental access to the mother. In September 2017, the father filed a petition to modify the 2016 order so as to award him sole legal custody of the child. Thereafter, in August 2020, the father filed an application, among other things, in effect, to modify the 2016 order so as to permit him to relocate with the child to Georgia. By order dated January 11, 2023, the court, after a hearing, inter alia, granted the father's petition to modify the 2016 order so as to award him sole legal custody of the child, granted that branch of the father's application which [*2]was, in effect, to modify the 2016 order so as to permit him to relocate with the child to Georgia, awarded the mother parental access with the child only to the extent of allowing her to communicate with him through written letters and packages by regular mail once per week, and conditioned any future modification of the mother's parental access with the child, in effect, upon her enrollment in mental health treatment and her resulting improvement in mental status, emotional regulation, psychological functioning, and empathy for the child. The mother appeals.
"A court may modify an order awarding custody and parental access upon a showing that there has been a subsequent change in circumstances and that modification is in the best interests of the child" (Matter of Narine v Singh, 229 AD3d 700, 701 [internal quotation marks omitted]; see Matter of Newton v McFarlane, 174 AD3d 67, 76-77). "The paramount concern when making such a determination is the best interests of the child under the totality of the circumstances" (Matter of Martinez v Gaddy, 223 AD3d 816, 817 [internal quotation marks omitted]). "When deciding whether a modification is in a child's best interests, factors to be considered include the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (Matter of Narine v Singh, 229 AD3d at 701 [internal quotation marks omitted]). "Stability and continuity in a child's life are [also] important factors, as are the child's wishes, which become more important as a child ages and matures" (Matter of Luke v Erskine, 222 AD3d 868, 870 [citation and internal quotation marks omitted]). However, "[t]he existence or absence of any one factor . . . cannot be determinative[,] . . . since the court is to consider the totality of the circumstances" (Matter of Fiore v Gima, 227 AD3d 1071, 1073 [internal quotation marks omitted]). "Since the Family Court's determination with respect to custody and [parental access] depends to a great extent upon its assessment of the credibility of the witnesses and upon the character, temperament, and sincerity of the parties, deference is accorded to its findings in this regard, and such findings will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Graffagnino v Esposito, 223 AD3d 805, 807 [internal quotation marks omitted]).
Here, the Family Court properly determined that a change in circumstances existed to warrant modification of the custody and parental access provisions of the 2016 order (see Matter of Narine v Singh, 229 AD3d at 702; Matter of Luke v Erskine, 222 AD3d at 871). With regard to custody, "the court properly concluded that joint legal custody was no longer in the best interests of the child in light of the parties' inability to effectively cooperate and communicate, and the [mother] does not contend otherwise" (Matter of Martinez v Gaddy, 223 AD3d at 818). Moreover, there is a sound and substantial basis in the record for the court's determination to award sole legal custody to the father, as the evidence "indicated that the [father] was better suited to provide for the child's overall well-being and that awarding h[im] sole legal custody was therefore in the child's best interests" (id. [internal quotation marks omitted]; see Matter of Fiore v Gima, 227 AD3d at 1074).
"Parental access is a joint right of the noncustodial parent and of the child" (Matter of Cornielle v Rosado, 231 AD3d 824, 827 [brackets and internal quotation marks omitted]). "The extent to which the noncustodial parent may exercise parental access is a matter committed to the sound discretion of the hearing court, to be determined on the basis of the best interests of the child" (Matter of Kerry D. v Deena D., 230 AD3d 492, 494 [brackets and internal quotation marks omitted]). "A noncustodial parent should have reasonable rights of parental access, and the denial of those rights to a [ ] parent is a drastic remedy which should only be invoked when there is substantial evidence that parental access would be detrimental to the child" (Matter of Walker v Sterkowicz-Walker, 203 AD3d 1167, 1168; see Matter of Valedon v Naqvi, 226 AD3d 914, 915). Here, contrary to the mother's contention, the Family Court's determination that it was in the child's best interests to limit her parental access to written letters and packages by regular mail once per week has a sound and substantial basis in the record (see Matter of Walker v Sterkowicz-Walker, 203 AD3d at 1168-1169; Matter of Velasquez v Kattau, 167 AD3d 912, 913; Matter of Fekete-Markovits v Markovits, 140 AD3d 1061, 1063). Among other reasons, the evidence at the hearing demonstrated that the mother's mental health had deteriorated over time, that she repeatedly made false reports of abuse to authorities, that she failed to appreciate the consequences of those reports [*3]on the child, that parental access time and telephonic communications with the mother had repeatedly caused the child emotional distress, and that the mother only partially participated in a court-ordered forensic evaluation (see Matter of Williams v Williams, 209 AD3d 745, 746-747; Matter of Krasner v Krasner, 94 AD3d 763, 764; Matter of Smith v Dawn F.B., 88 AD3d 729, 730).
Further, "[a] court deciding a custody proceeding may properly direct a party to submit to counseling or treatment as a component of a visitation or custody order" (Matter of Mazo v Volpert, 223 AD3d 907, 909 [internal quotation marks omitted]). "However, a court may not direct that a parent undergo counseling or treatment as a condition of future parental access or reapplication for parental access rights" (Matter of Coley v Steiz, 215 AD3d 830, 832; see Matter of Hardy v Hardy, 194 AD3d 1043, 1045). Here, the Family Court should not have conditioned any future modification of the mother's parental access with the child, in effect, upon her enrollment in mental health treatment and her resulting improvement in mental status, emotional regulation, psychological functioning, and empathy for the child (see Matter of Buskey v Alexis, 226 AD3d 770, 772; Matter of Mazo v Volpert, 223 AD3d at 910). Nonetheless, to the extent the court directed the mother to submit to such treatment as a component of her parental access, this was proper (see Matter of Buskey v Alexis, 226 AD3d at 772; Matter of Welch v Taylor, 115 AD3d 754, 756).
Finally, "[a] parent seeking to relocate with a child bears the burden of establishing by a preponderance of the evidence that the proposed move would be in the child's best interests" (Quinn v Quinn, 134 AD3d 688, 689). "In determining whether relocation is appropriate, the court must consider a number of factors including each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Scotto v Alexander, 231 AD3d 1157, 1158 [internal quotation marks omitted]; see Matter of Tropea v Tropea, 87 NY2d 727, 740-741). Here, the Family Court's determination to grant the father permission to relocate with the child to Georgia has a sound and substantial basis in the record (see Lavery v O'Sullivan, 205 AD3d 1013, 1015; Mathie v Mathie, 65 AD3d 527, 530). The evidence at the hearing demonstrated, inter alia, that the father and the child's stepmother had secured employment in Georgia, that their living expenses in Georgia were significantly lower than in New York, and that, as a result, the child had access to a higher standard of living and the ability to participate in more activities than he did in New York (see Matter of Sahagun v Alix, 107 AD3d 722, 722-723).
The mother's remaining contentions are without merit.
CONNOLLY, J.P., MILLER, VENTURA and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court