■ JENNIFER L. SATALINO, Appellant, v TONY M. SATALINO, Respondent. [711 NYS2d 350] —Spain, J. Appeal from an order of the Supreme Court (Malone, Jr., J.), entered August 18, 1999 in Albany County, which, *inter alia*, granted plaintiff's motion to relocate with the parties' child.

The parties were married in 1989 and have one child (born in 1995). They separated in May 1998 and entered into a separation agreement on June 2, 1999. Regarding the custody and visitation of their daughter the parties agreed to, among other things, joint custody with "primary physical custody" in plaintiff "at her place of residency." They also agreed to "reasonable, open visitation" for defendant, including "every other weekend from Saturday at 6:00 p.m. until Sunday at 9:00 p.m. and every Wednesday from 6:00 p.m., when [defendant] gets out of work until Thursday morning at 8:00 a.m."; "shared holidays, one week in the summer"; and at such other times "as the parties can agree upon." The agreement further states that "[defendant] shall not have any intoxicating liquors or in any way abuse a substance or medication twenty-four (24) hours before any visitation up through and including the termination of the visitation period with the return of the child to [plaintiff]." Notably, there is no such condition imposed upon plaintiff and the agreement does not contain any limitation on relocation. One month after the execution of the separation

agreement, by decree entered July 8, 1999, the parties were divorced and the separation agreement was incorporated into but did not merge with the judgment of divorce.

Less than a month after the entry of the judgment of divorce plaintiff made a motion seeking permission to relocate to Cattaraugus County in western New York, approximately 340 miles—more than five hours by automobile—from defendant's residence in Schenectady County. Defendant opposed the motion. Thereafter, Supreme Court appointed a Law Guardian to represent the child and held an evidentiary hearing. At the opening of the hearing defendant made an oral motion for primary physical custody. At the close of the hearing the court granted plaintiff's motion, concluding that the proposed relocation was in the child's best interest, and continued the joint custody arrangement with visitation to defendant every third weekend, two weeks in the summer and additional visits—including shared holidays—as agreed upon between the parties; the expense and responsibility for all transportation was to be borne by plaintiff. Supreme Court also denied defendant's cross motion for primary physical custody and defendant now appeals.

The Court of Appeals in *Matter of Tropea v Tropea* (87 NY2d 727) has observed that relocation cases "present some of the knottiest and most disturbing problems that our courts are called upon to resolve" (*id.*, at 736), and that in deciding relocation issues courts must consider, *inter alia*: "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move" (*id.*, at 740-741).

Other factors—according to *Tropea*—include "the good faith of the parents in requesting or opposing the move * * * the possibility of devising a visitation schedule that will enable the noncustodial parent to maintain a meaningful parent-child relationship, the quality of the life-style that the child would have if the proposed move were permitted or denied * * * and the effect that the move may have on any extended family relationships" (*id.*, at 740). Further, "each relocation request must be considered on its own merits * * * with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (*id.*, at 739). Significantly, the trial court's "determination on the issue of custody will not be

disturbed unless it lacks a sound and substantial basis in the record" (*Osborne v Osborne*, 266 AD2d 765, 766). As the party seeking the relocation, plaintiff had the burden of establishing by a preponderance of the evidence that relocation would be in the child's best interest (*see, Matter of Kemp v Teeter*, 252 AD2d 685, 686; *Matter of Yelverton v Stokes*, 247 AD2d 719, 720-721, *lv denied* 92 NY2d 802).

Plaintiff's principal reason for her requested move to Cattaraugus County was that she was engaged to marry a man who resides in and who is well settled in that community. However, plaintiff asserts that in its totality the relocation will also be in the child's overall best interest. Her fiancé owns an extensive three-bedroom home where plaintiff and the child would eventually reside. He earns approximately $70,000 per year and has been unsuccessful in his attempt to find employment in the Albany area. At the time of the hearing plaintiff was working at an Albany area insurance agency 40 hours per week and earning $38,000 per year. She was offered two employment positions in Chautauqua County (a county which adjoins Cattaraugus County) totaling 40 hours per week—12 hours of which are very flexible—with a combined salary of $72,000 per year. Plaintiff contrasted the home of her fiancé to her current home which was in a state of disrepair and under mortgage foreclosure. Her future husband's home is purportedly in a nice neighborhood and near a playground and public school. Moreover, plaintiff asserted that her increased income would allow her to enroll the child in a Montessori nursery school close to where she would be working. Plaintiff described herself as the primary care giver and she and her fiancé each testified that the child had developed a positive and loving relationship with the fiancé, whom the child had known for more than a year.

Defendant's principal reason for objecting to the move is that he and his family will be denied quality access to his daughter. In contrast to plaintiff's testimony of his limited involvement in the rearing of the child and in utilizing his visitation rights, he testified to being regularly involved in caring for the child especially during the period of time after she was six months old when he was out of work. He raised concerns that, if relocation occurred, he would not be able to attend his daughter's school and extracurricular events and activities. He denied a chronic alcohol problem but admitted drinking four or five beers every night—and sometimes more—during the six months leading up to the separation. Notably, neither party has any relatives in the Cattaraugus County area and the child has

had meaningful relationships with her extended family—on both sides of the family—in the Albany area.

In our view the record provides ample support for Supreme Court's conclusion that the child's best interest will be served by permitting her relocation to Cattaraugus County with plaintiff. In obviously crediting the testimony of plaintiff over that of defendant on the issues of defendant's involvement in the rearing of the child, his failure to fully utilize the visitation schedule and his abuse of alcohol, Supreme Court—appropriately noting that the *Tropea* standards were applicable in this case—specifically referred to the language of the separation agreement in arriving at its conclusion and then carefully crafted a visitation schedule providing periods of quality time with the child in the Albany area with defendant and his family.

Plaintiff's desire to move to western New York was not motivated by bad faith but the reality of better opportunities for her and the child in the locale where her fiancé resides and is successfully employed (*see, Matter of Tropea v Tropea*, 87 NY2d 727, 740-741, *supra*). There is also ample evidence in the record to support the conclusion that defendant was aware of the long-distance relationship between plaintiff and her fiancé and of her regular visits to western New York with the child long before the parties entered into the separation agreement which provides for primary physical custody in plaintiff "at her place of residency."

Because we believe that the visitation arrangement during the child's school year is appropriate it will not be disturbed. However, we conclude that granting defendant four weeks of visitation during the summer is a more suitable way to insure more quality contact between the child, defendant and the supportive extended family.

We have considered defendant's remaining contentions and find them to be lacking in merit.

Cardona, P. J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the facts, without costs, by providing an additional two weeks of visitation during the summer for defendant, and, as so modified, affirmed.