■ In the Matter of RYAN ADAMS, Respondent, v ALECIA BRACCI, Appellant. (And Eight Other Related Proceedings.) [936 NYS2d 738]—

McCarthy, J.

Although Family Court should have analyzed this matter as a relocation proceeding, the court did not err in awarding sole custody to the father. In contrast to an ordinary modification proceeding, where the petitioning party must demonstrate a change in circumstances and that a modification is in the child's best interests, a relocation is accepted as a change in circumstances, requiring the parent seeking the move to demonstrate

that relocating the child with the custodial parent is in the child's best interests. Factors to consider in this situation include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (*Matter of Tropea v Tropea,* 87 NY2d 727, 740-741 [1996]; *see Matter of Sniffen v Weygant,* 81 AD3d 1054, 1055 [2011], *appeals dismissed* 16 NY3d 886 [2011], 17 NY3d 884 [2011]).

Here, the father was required to move due to military orders. Although he chose to renew his contract and remain in the Marines, that choice provided him with stability in employment during turbulent economic times, as well as benefits including health insurance for his family. After the transfer, he worked regular daytime hours, permitting him to be at home with the child in the evening and on weekends. The father had a stable living environment with his wife and their two children. Before the move, the father lived approximately two hours away from the mother. After the move, the drive took approximately five hours each way. While the drive was longer, it did not directly affect the mother's ability to exercise her visitation, which had been one weekend per month and a second optional weekend per month, plus summer and holiday visits. Following the 2008 transfer of custody to the father, the mother quit her job to pursue an Associate's degree,[1] leaving her with no source of income (*compare Matter of Siler v Wright,* 64 AD3d 926, 928 [2009]). She was then unable to pay her court-ordered child support, resulting in the suspension of her driver's license. This complicated transportation for visits.

Each parent had a good relationship with the child, but they agreed that they could not communicate with one another or co-operate regarding the raising of their child, rendering joint custody inappropriate (*see Matter of Clupper v Clupper,* 56 AD3d 1064, 1065 [2008]). Family Court found that the father made efforts to contact the mother, while she frustrated efforts at communication. The mother had a very close relationship with the

1.  While the mother's address was in Delaware County, she testified that she attended Hudson Valley Community College in Rensselaer County. She did not explain whether she had another residence near school or whether she commuted approximately two hours each way every day to attend her classes.

maternal grandmother, who the court saw as toxic to the parents' relationship and ability to communicate. Additionally, the father testified that when the child returned from visits, she was dirty and defiant.

The parties were unable to agree upon medical care for the child. In previously transferring custody to the father, Family Court noted that the child suffered major dental problems while in the mother's care (*Matter of Adams v Bracci*, 61 AD3d at 1067). Despite her approving of dental treatment without consulting the father, the mother complained that he sought treatment for the child without consulting her and she refused to consent to treatment. Her attorney contacted the child's dentist, which caused the dentist to refuse to provide further treatment without a court order. Contrary to the mother's arguments that the father neglected the child's medical needs, he testified that he brought the child to the doctor or specialists for each medical condition that the mother mentioned, and that he followed the recommendations of those medical professionals.

The way each parent handled allegations of abuse signal how they would protect the child and deal with the other party. The mother and grandmother made numerous allegations of physical, emotional and sexual abuse and neglect by the father and stepmother. Most of these allegations were raised in court petitions or affidavits, not raised with the father, police or medical professionals. Upon hearing of each allegation, the father brought the child to the doctor, a sexual abuse expert or consulted the Department of Social Services. The father also made allegations of improper behavior against the mother and grandmother. All reports to child protective services concerning the father were unfounded, but one concerning the mother was indicated. As noted earlier, Family Court felt that the grandmother interfered with and impeded the father's relationship with the child, as well as his ability to communicate with the mother, and that the mother acquiesced in the grandmother's actions.

The father offered consistency in the child's life and was more open to foster the child's relationship with the mother, while the mother thwarted attempts at communication and appeared less likely to encourage any relationship between the child and the father. Due to the parties' well-demonstrated inability to effectively communicate and cooperate for the well-being of their daughter, and giving deference to Family Court's credibility and factual determinations (*see Matter of Siler v Wright*, 64 AD3d at 928), the record supports the court's determination that the

child's best interests are served by permitting the father to relocate and awarding him sole custody (*see Matter of Hills v Madrid*, 57 AD3d 1175, 1176 [2008]).

Family Court did not err in reducing the mother's visitation to one weekend per month[2] and requiring her to exercise that visitation within a 50-mile radius of the father's home. Restricting the location of visitation relieved the child of dealing with the long drive, which took approximately five hours (*see Matter of Moore v Schill*, 44 AD3d 1123, 1123 [2007]). Considering the acrimony between the parties, the reduction of visitation exchanges would also decrease the child's exposure to any forced interaction between her mother and father. Accordingly, we will not disturb the parameters set by the court on the mother's visitation (*see DeLorenzo v DeLorenzo*, 81 AD3d 1110, 1112 [2011], *lv dismissed* 16 NY3d 888 [2011]; *see also Matter of Franklin v Richey*, 57 AD3d 663, 664 [2008]).

Family Court ordered that the mother be responsible for all transportation. As this aspect of the order was based mainly on credibility determinations—finding the mother mainly responsible for the transportation difficulties, including the self-inflicted suspension of her license—we will not disturb it.

Peters, J.P., Rose and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

---

2. Under the previous order, the mother had visitation one weekend per month, with a second weekend available if the mother chose to visit. Both the prior and current orders provide the mother with summer and holiday visitation.