■ RACHEL A. ROSE, Formerly Known as RACHEL A. BAILEY, Appellant, v ETHAN BUCK, Respondent. [962 NYS2d 356]—

Spain, J. Appeal from an order of the Supreme Court (Tomlinson, J.), entered September 15, 2011 in Montgomery County, which, among other things, denied plaintiff's motion to modify the parties' judgment of divorce.

Plaintiff (hereinafter the mother) and defendant (hereinafter the father) were married in 2006, had a daughter in November 2007 and separated in April 2010. The parties stipulated to joint custody with the mother having primary physical custody and the father having weekly parenting time. The stipulation was incorporated into a judgment of divorce entered in December 2010. The mother was married in March 2011 to Randy Rose, a resident of Kentucky who she met in March 2010 while he was on a year-long temporary construction supervisor assignment at her company, and they were expecting their first child in October 2011. Upon her remarriage, the mother moved to modify the judgment of divorce to allow her to relocate with the

child to Kentucky to live in her new family unit with Rose. The father strenuously objected and cross-moved for sole custody. After a hearing, Supreme Court denied all motions finding, in a comprehensive and well-reasoned decision, that relocation was not in the child's best interests. The mother appeals.

As the party seeking to relocate, the mother bore the burden of establishing by a preponderance of the credible evidence that the proposed relocation would be in the child's best interests (*see Matter of Kirshy-Stallworth v Chapman*, 90 AD3d 1189, 1190 [2011]; *Matter of Munson v Fanning*, 84 AD3d 1483, 1484 [2011]; *Matter of Sofranko v Stefan*, 80 AD3d 814, 815 [2011]). "Among the factors to be considered in determining whether relocation is in the child's best interest are each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the [non-moving] parent, the degree to which the [moving] parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the [non-moving] parent and child through suitable visitation arrangements" (*Matter of Sniffen v Weygant*, 81 AD3d 1054, 1055 [2011] [internal quotation marks and citations omitted], *appeals dismissed* 16 NY3d 886 [2011], 17 NY3d 884 [2011]; *see Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *Matter of Hissam v Mancini*, 80 AD3d 802, 803 [2011], *lv dismissed and denied* 16 NY3d 870 [2011]; *Matter of Solomon v Long*, 68 AD3d 1467, 1469 [2009]). The principles enunciated in *Tropea* apply even where, as here, the parties have joint custody (*see Thompson v Smith*, 277 AD2d 520, 521 [2000]). Given Supreme Court's unique ability to view the witnesses and evaluate their "testimony, character and sincerity" (*Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]), that court was "in the best position to make factual findings and credibility determinations [and] its decision will not be disturbed if it is supported by a sound and substantial basis in the record" (*Matter of Pizzo v Pizzo*, 94 AD3d 1351, 1352 [2012]). The court's credibility and factual determinations are amply supported in the record on appeal (*see id.*; *DeLorenzo v DeLorenzo*, 81 AD3d 1110, 1111 [2011], *lv dismissed* 16 NY3d 888 [2011]).

It is apparent from the record that the child has two able and devoted parents with whom she has loving relationships in which she has been nurtured and thrived, and that there are factors which weigh in favor of and against relocation, making Supreme Court's determination a difficult one (*see Matter of*

*Scheffey-Hohle v Durfee*, 90 AD3d 1423, 1424-1425 [2011], *appeal dismissed* 19 NY3d 876 [2012]). Indeed, at the hearing, both parents, ages 27 (the mother) and 29 (the father), acknowledged the good parenting of, and the child's close relationship with, the other.

Since the parties' separation, the father has enjoyed significant parenting time, initially every weekend and then, pursuant to the parties' stipulation, on a two-week schedule in which the child was with him 6 out of every 14 days, almost half of the time. The father, who is not married and has no other children, lives with his parents in their ample five-acre farmhouse in the Town of Canajoharie, Montgomery County. He is employed full time as a union mason, earning an annual salary of approximately $49,000; he consistently exercises all of his parenting time and is actively engaged in caring for the child's needs. The father continued the child part time in the daycare she was attending, where the transfer of the child usually occurred. The father has consistently fulfilled his obligations to pay child support and his share of daycare expenses, health insurance and uncovered medical expenses. At the time of the 2011 hearing, the mother maintained an apartment in the City of Gloversville, Fulton County, a location she did not disclose to the father for a period of time. She had been terminated from her employment and then relocated to Kentucky to be with her husband, apparently taking the child with her and returning weekly to facilitate the father's parenting time.*

The mother's reasons for requesting to relocate the child are genuine, to raise the child in her new family unit. Rose owns a small townhouse in Stanton, Kentucky in which they planned to live until they build a new, larger home on a nearby 150-acre horse farm in Compton, Kentucky which they jointly own. Rose, who is 30 years the mother's senior, is an established, successful construction project manager in Kentucky with two profitable side businesses at which the mother planned to work part time at home, allowing her to be home with her children. Rose had, in February 2011, secured a full-time position as a senior project manager in Lexington, Kentucky at an annual salary of $120,000. By all accounts, Rose has a wonderful and supportive nearby extended family in Kentucky consisting of adult children and young grandchildren, who are a regular part of his active lifestyle and some of whom have formed close relationships with the child, as has he, during her extended stays in Kentucky. He

---

* The mother's counsel advised the Court at oral argument that the mother presently lives with her children in the City of Amsterdam, Montgomery County where the child is enrolled in school.

testified credibly that he would promote and facilitate the child's visits and relationship with the father as he had done for another stepchild. The mother, who has an Associate's degree, worked as an administrative assistant for about a year until her January 2011 termination and, prior to that, as a paralegal; she essentially stopped looking for work in January 2011 upon being terminated and learning of her pregnancy, having consulted only one Internet career website. She testified that there was little work available to her in the Fulton County area since the downturn of the economy and that, if she were denied permission to relocate, she was unsure what she would do and would probably have to look for work in a more active area such as the City of Albany.

The father opposed the move because it would deprive him, his parents and extended family and friends of their close involvement and regular weekly, nearly equal time with the child. The mother, cognizant that the child was approaching school age, proposed that the father have the child for extensive periods in the summer, school breaks and holidays and during her return visits to New York; the father would have phone and Skype contact and she would assist his visits or relocation to Kentucky. However, the distance, 700-800 miles, is prohibitive, particularly for a young child, requiring an 11-hour (or more) one-way car ride or a six-hour door-to-door plane trip (with connections, as there is no direct flight), with travel time, making weekend or short trips impractical. The father desired that the child remain in the New York area where she has always lived and has extensive family and friends on both parents' sides. Indeed, the court found no evidence that his opposition was motivated by "a hurtful purpose," instead finding that he acted with "heartfelt honesty." The father also opposed any parallel relocation to Kentucky given the absence by him (or the mother) of any relatives or friends in that state.

The record fully supports the conclusion that the father is significantly involved in the child's life, that she benefits a great deal from that relationship, and that the proposed move would have a significant, deleterious impact on the quality and quantity of her future contact with him (*see Matter of Feathers v Feathers*, 95 AD3d 1622, 1623-1624 [2012]; *Matter of Scheffey-Hohle v Durfee*, 90 AD3d at 1427; *Matter of Williams v Williams*, 90 AD3d 1343, 1345 [2011]; *Matter of Munson v Fanning*, 84 AD3d at 1485; *Matter of Solomon v Long*, 68 AD3d at 1468-1470). To be sure, the fact that under the mother's relocation proposal the father may ultimately have "approximately the same number of total hours of visitation each year does not

change the fact that the father will be deprived of regular and meaningful access to his child and, more to the point, that she no longer will benefit from his consistent presence in her life" (*Matter of Scheffey-Hohle v Durfee*, 90 AD3d at 1427).

Finally, the mother did not establish that the child's life would be enhanced "economically, emotionally and educationally" by the move (*Matter of Tropea v Tropea*, 87 NY2d at 740-741). Supreme Court found that, while the mother's move would improve her economic outlook, thus benefitting the child, there was no economic necessity for the move, given the mother's lack of efforts to find suitable employment in New York and failure to consider the feasability of Rose returning to New York. As the court concluded, the child's emotional health and stability would not be enhanced by the move, in that it would effectively deprive her of meaningful contact with her "devoted, loving, caring and capable father."

Weighing in favor of relocation are the comfortable lifestyle and economic improvement awaiting the mother and child in Kentucky, the stability offered by the mother's new post-divorce family unit, including the child's new half sibling, the mother's ability to work part time at home, the child's very close relationship with her mother who has always cared for her and the child's newly formed positive relationships with Rose and his extended family. Heavily weighing against allowing the young child's relocation are the considerable distance involved for which no suitable visitation schedule could be devised to preserve the child's current close and involved relationship with her father and extended family, the overall detrimental impact of the move on the child's future contact and relationship with her father, a "central concern" (*Matter of Tropea v Tropea*, 87 NY2d at 739), and the loss of a comfortable farm-like childhood home with her father, a regularly employed, active parent whose exercise of parenting time has been unwavering. Further, the child, like the father, has no other ties to Kentucky. Moreover, the parties' strained interactions and communication, including during the transfer of the child, did not afford optimism that interstate travel and visitation would be smooth.

Considering all of the foregoing, Supreme Court's conclusion is fully supported by the record that "the best interests of [the child] are protected by preserving the benefits she receives from the positive interaction of each parent, on a rotating schedule of almost equal parenting time." Thus, we discern no basis upon which to disturb the court's determination, after thoughtful consideration, that the proposed distant relocation was not in the child's best interests (*see Matter of Feathers v Feathers*, 95

AD3d at 1623-1624; *Matter of Scheffey-Hohle v Durfee*, 90 AD3d at 1428-1429; *Matter of Munson v Fanning*, 84 AD3d at 1484-1485; *Matter of Solomon v Long*, 68 AD3d at 1469-1470).

Finally, however, we agree with the mother's contention that Supreme Court, in its order, should not have—without explanation—limited her to residing in Montgomery or Fulton Counties, which would preclude her move to adjacent or nearby counties even if such move did not impact upon the existing custody arrangement. The judgment governing custody did not preclude such a local move and no request was made by the father for such a restriction. Accordingly, we modify the order to provide that the mother may not, without court approval or the father's written permission, relocate her primary residence with the child more than 50 miles from the father's current residence in Montgomery County.

Mercure, J.P., Stein and McCarthy, JJ., concur. Ordered that the order is modified, on the law, without costs, by ordering that plaintiff cannot move more than 50 miles from defendant's current address without court approval or defendant's written permission and, as so modified, affirmed.