■ In the Matter of JASON P. COLE, Respondent, v GEORGIANNA E. REYNOLDS, Appellant. [973 NYS2d 469]—

Spain, J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered April 2, 2012, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 1998). In 2003, after a full hearing, the father was granted sole custody of the child and the mother was granted parenting time consisting of one overnight visit on alternating weekends, additional holiday visitation and two weeks of summer visitation (*see Matter of Cole v Reynolds*, 8 AD3d 703 [2004]).* In early 2012, the father commenced this proceeding by petition and amended petition seeking permission to relocate with the child from his home in the City of Ithaca, Tompkins County to Bethesda, Maryland, which the mother opposed. After a fact-finding hearing, Family Court granted the father's petition and modified the mother's parenting time accordingly. The mother now appeals, and we affirm.

The party seeking to relocate with a child—here, the father—bears the burden of establishing by a preponderance of the credible evidence that the relocation is in the child's best interests (*see Rose v Buck*, 103 AD3d 957, 958 [2013]; *Matter of Shirley v*

---

* This order was modified by an August 2008 order to prohibit unsupervised contact between the child and a former paramour of the mother, but left the parenting time schedule intact.

*Shirley*, 101 AD3d 1391, 1392 [2012]; *Matter of Scheffey-Hohle v Durfee*, 90 AD3d 1423, 1425 [2011], *appeal dismissed* 19 NY3d 876 [2012]). Family Court must consider a number of relevant factors in making this determination, including " 'each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the [nonmoving] parent, the degree to which the [moving] parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the [nonmoving] parent and child through suitable visitation arrangements' " (*Matter of Adams v Bracci*, 91 AD3d 1046, 1047 [2012], *lv denied* 18 NY3d 809 [2012], quoting *Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *see Rose v Buck*, 103 AD3d at 958; *Matter of Munson v Fanning*, 84 AD3d 1483, 1484 [2011]). Notably, as "Family Court is in the best position to make factual findings and credibility determinations, its decision will not be disturbed if it is supported by a sound and substantial basis in the record" (*Matter of Pizzo v Pizzo*, 94 AD3d 1351, 1352 [2012]; *accord Matter of Batchelder v BonHotel*, 106 AD3d 1395, 1396 [2013]; *Matter of Weber v Weber*, 100 AD3d 1244, 1245-1246 [2012]).

Here, the father has been the primary caretaker for the now 15-year-old child since she was five years old. His household consists of himself, his wife, the child and their three-month-old son, all of whom have a close and supportive family relationship. As to the reasons for and the economic factors surrounding the proposed relocation, the father has a Master's degree in biomedical engineering but, at the time of the hearing, he was employed as a regional sales executive selling medical devices and not working in his trained and desired field. Although he earned approximately $115,000 in 2011, Family Court's finding that his average salary in this position is around $75,000—as his pay was based solely on commissions that have varied greatly over the years—is supported by the record, which includes the joint tax returns of the father and his wife together with their testimony. While diligently searching for a job closer to home in his desired profession, the father was offered a position with the U.S. Navy as a commissioned officer in the Medical Service Corps, to be stationed at Bethesda Naval Hospital (*compare Matter of Grathwol v Grathwol*, 285 AD2d 957, 959 [2001]; *Thompson v Smith*, 277 AD2d 520, 522 [2000]). While the base salary of this position is approximately $40,000, the father would also receive, among other things, a tax-free housing allowance of approximately $28,000 per year, a subsistence allow-

ance of $2,880 per year, deferment of his student loans with the possibility of the cancellation of the total amount of his loans ($60,000), retirement benefits and health insurance coverage for his entire family. The father's current position does not provide health insurance for the child, who has specific medical needs (*compare Matter of Adams v Bracci*, 91 AD3d at 1047), and, despite the reduction in the father's base salary, Family Court's finding that the father's proposed new employment would provide approximately equal economic benefits as his existing position is also supported by the record.

The mother's household consists of herself, her partner, their children—ages six and eight—and the mother's 17-year-old son from a prior relationship. The mother opposes the relocation because the long distance would hinder the child's relationship and the frequency of parenting time with her, as well as with the child's half siblings, with whom the child has good relationships. Significantly, however, she has rarely asked for more time with the child and has never petitioned Family Court for any formal expansion of her limited time. The father's wife recognized the importance of continuing to foster a close relationship between the child and the mother and half siblings; the wife indicated that, in addition to any ordered visits, there would be additional opportunities for visits, as they would often be traveling to places near the mother's home in Tioga County when visiting their parents and extended family in nearby Broome and Tompkins Counties, and they would encourage phone calls and online video chats with the mother and half siblings (*compare Matter of Shirley v Shirley*, 101 AD3d at 1393; *Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1257-1258 [2009]).

Additionally, the record demonstrates that, while the father and his wife are substantially involved in the child's social, educational and extracurricular activities, the mother's involvement, in contrast, has been essentially limited to the scheduled alternate weekend parenting time, and she has had minimal involvement or knowledge of the child's educational development or social life (*compare Rose v Buck*, 103 AD3d at 959-961; *Matter of Scheffey-Hohle v Durfee*, 90 AD3d at 1426-1427; *Matter of Munson v Fanning*, 84 AD3d at 1484; *Matter of Jelfo v Arthur*, 295 AD2d 689, 691 [2002]; *Matter of Kryvanis v Kruty*, 288 AD2d 771, 772 [2001]). Also, the record reflects that the father and his wife have substantial knowledge of and have closely monitored the child's medical and dietary needs, while the mother has only a basic familiarity with those needs (*compare Matter of Sniffen v Weygant*, 81 AD3d 1054, 1056 [2011], *appeals dismissed* 16 NY3d 886 [2011], 17 NY3d 884 [2011];

*Matter of Vargas v Dixon*, 78 AD3d 1431, 1432-1433 [2010]). As to educational opportunities, among other things, the father and the child visited a high school in the area where they expect to live, which would provide—in addition to her education—the opportunity for the child's desired extracurricular activities, and it is evident that the child makes new friends easily (*cf. Matter of Feathers v Feathers*, 95 AD3d 1622, 1624 [2012]). In contrast, there was testimony that the academic and extracurricular activities of her current high school were subject to budget cuts.

While Family Court aptly recognized the fact that relocation would negatively impact the frequency of the child's time with her mother and half siblings, it expanded the existing schedule by awarding time during Thanksgiving or Christmas in alternating years, one week during spring recess, three weeks in August and regularly scheduled weekly 30-minute "Skype" or telephone calls between the child, her mother and her half siblings, with the father incurring all transportation costs (*compare Thompson v Smith*, 277 AD2d at 522; *Satalino v Satalino*, 273 AD2d 632, 633 [2000]). Based upon the foregoing, we agree that the father met his burden of demonstrating by a preponderance of the evidence that it is in the child's best interests to relocate with her paternal family (*see Rose v Buck*, 103 AD3d at 958). Upon our review of the record, it is clear that Family Court carefully considered the relevant factors and that its decision is supported by a sound and substantial basis in the record (*see Matter of Grathwol v Grathwol*, 285 AD2d 957, 958 [2001]).

Rose, J.P., Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.