*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 8, 2015                    515664
_____

In the Matter of JULIE E.,
                    Appellant,

     v
                                        MEMORANDUM AND ORDER

DAVID E.,
                    Respondent.

(And Three Other Related Proceedings.)
_____

Calendar Date:  November 19, 2014

Before:  Lahtinen, J.P., Garry, Rose and Devine, JJ.

_____

       Douglas Walter Drazen, Binghamton, for appellant.

       Norbert Higgins, Binghamton, for respondent.

       Alena E. Van Tull, Binghamton, attorney for the children.

_____

Garry, J.

       Appeal from an order of the Family Court of Broome County
(Charnetsky, J.), entered October 10, 2012, which, among other
things, dismissed petitioner's application, in four proceedings
pursuant to Family Ct Act articles 5, 6 and 8, for permission to
relocate with the parties' children.

       Petitioner (hereinafter the mother) has a daughter and a
son (born respectively in 2007 and 2004).  Respondent
(hereinafter the father) is the daughter's biological father, and
he shares joint custody of both children with the mother pursuant
to a 2010 order; the children's primary residence is with the
mother.  In December 2011, the mother commenced the first of

these proceedings by filing a family offense petition. The father then filed a petition for modification of custody and a petition for modification of visitation, and the mother cross-petitioned for leave to relocate with the children to Texas. Following a fact-finding hearing and an interview with the children, Family Court dismissed the relocation and modification petitions, and the remaining petitions were dismissed without prejudice. The mother appeals arguing that the court erred in dismissing her relocation petition.

As the mother contends, Family Court applied the incorrect standard in dismissing the relocation petition on the ground that the mother had failed to show a sufficient change in circumstances to warrant modification. No change in circumstances must be established to support a relocation petition, as the planned move itself is accepted as such (see Matter of Adams v Bracci, 91 AD3d 1046, 1046-1047 [2012], lv denied 18 NY3d 809 [2012]; see also Lauzonis v Lauzonis, 120 AD3d 922, 923 [2014]). Instead, the parent who wishes to relocate bears the burden of establishing that the proposed move is in the best interests of the children, a determination based upon such factors as the parents' reasons for seeking or opposing relocation, the quality of the children's relationships with each parent, the feasibility of developing a visitation schedule that will permit the children to retain meaningful relationships with the parent who does not move, the degree to which the move may offer economic, emotional and educational benefits for the relocating parent and the children, and the effect of the relocation on extended family relationships (see Matter of Tropea v Tropea, 87 NY2d 727, 740 [1996]; Matter of Norback v Norback, 114 AD3d 1036, 1036-1037 [2014]; Matter of Cole v Reynolds, 110 AD3d 1273, 1273-1274 [2013]). Although that analysis was not conducted here, this Court's authority is as broad as that of Family Court, and the record is sufficiently complete to permit us to make the relocation determination based upon our independent review (see Ostrander v McCain, 68 AD3d 1480, 1483 [2009]; Matter of Valenti v Valenti, 57 AD3d 1131, 1132 [2008], lv denied 12 NY3d 703 [2009]).

The mother testified that she wished to relocate to benefit from the economic and emotional support of her father

(hereinafter the grandfather) and other family members who reside in Texas. She stated that she worked part time in New York as a personal care aide with variable wages but, in Texas, she would be able to work full time in a family storage business, earning a salary of approximately $28,000, which would permit her to discontinue receiving public assistance and residing in public housing, as she does in New York, and to forgo the father's child support obligation. In her later testimony the mother qualified this claim, stating that her wages might be only $10 per hour, that she was not sure what her salary would be, and that "[w]e really haven't talked about that." The grandfather and the mother's sister confirmed that a job was available for the mother in the family business, as well as a home that the mother and children would share with the mother's sister. The grandfather further testified that he would be able to assist the mother, who has a GED, in obtaining a college education if she moved, but failed to explain why any such assistance would not be available if she remained in New York. As for the children's education, the mother identified the schools that they would attend in Texas and stated that she was pleased with them, but offered no evidence comparing them to the children's New York schools or indicating that better educational opportunities were available in Texas.

The father opposed the mother's relocation request because of the detrimental impact such a move would have on his contact and relationship with the children. The father testified that, pursuant to the current order, he spends Tuesday and Thursday evenings with the children each week and has an overnight visit every weekend. Although the mother testified that the father often missed these visits or left the children with the paternal grandmother, the father and grandmother disputed this claim, testifying that he had missed only a few recent visits, partly as the result of a serious illness, and that he was always present when the children visited the grandmother during his visitation periods. The mother testified that the father would be free to visit the children in Texas following the move and could maintain telephone and Skype contact with them, but that she would be reluctant to permit the children to return to New York for visits with him. The father, however, testified that financial obstacles would make it difficult for him to travel to Texas.

The testimony established that a move would permit the children to establish better relationships with extended family members in Texas, with whom their contact has primarily been limited to telephone or Skype, but would simultaneously limit or destroy their opportunities for contact with paternal relatives with whom they presently enjoy well-established relationships. In particular, the paternal grandmother has been closely involved with the children throughout their lives. She testified that the mother, father and children resided with her or near her before the parents separated and that she presently resides next door to the father and sees the children frequently. She further testified that several other paternal relatives live nearby and that she has maintained a positive relationship with the mother, hosting informal visits with the mother and children at the grandmother's home and sometimes providing babysitting assistance when the mother travels.

Family Court found that both parents are fit custodians who enjoy positive relationships with the children, although not with one another; the mother testified that there had been previous incidents of domestic violence. Considering all of the relevant factors and based primarily on the significant harmful impact that a move would have upon the children's well-established relationships with the father and his family in New York, we conclude that the mother did not meet her burden of demonstrating that relocation to Texas would be in their best interests (see Matter of Cowper v Vasquez, 121 AD3d 1341, 1343 [2014]; Matter of Jones v Soriano, 117 AD3d 1350, 1351-1352 [2014], lv denied 24 NY3d 901 [2014]; Rose v Buck, 103 AD3d 957, 960-961 [2013]; Matter of Munson v Fanning, 84 AD3d 1483, 1485 [2011]).

As a final matter, we note that Family Court conducted what was described as a "modified" Lincoln hearing, in which counsel for both parents were permitted to be present during the court's interview with the children. The transcript of the interview was not sealed, and was included in full in the appellate record. Neither the presence of counsel other than the attorney for the children during the interview nor the failure to seal the transcript was proper. We reiterate that the right to confidentiality during a Lincoln hearing belongs to the child and is superior to the rights or preferences of the parents (see

Matter of Lincoln v Lincoln, 24 NY2d 270, 271-272 [1969]; Matter of Lawrence v Kowatch, 119 AD3d 1004, 1006 n 1 [2014]; Matter of Susan LL. v Victor LL., 88 AD3d 1116, 1119 n 4 [2011]; Matter of Spencer v Spencer, 85 AD3d 1244, 1246 [2011]; Matter of Verry v Verry, 63 AD3d 1228, 1229 [2009], lv denied 13 NY3d 707 [2009]; Matter of Hrusovsky v Benjamin, 274 AD2d 674, 676 [2000]; Matter of Sellen v Wright, 229 AD2d 680, 681-682 [1996]; see also Family Ct Act § 664 [b]).  A child who is explaining the reasons for his or her preference in custody or visitation proceedings "should not be placed in the position of having [his or her] relationship with either parent further jeopardized by having to publicly relate [his or her] difficulties with them or be required to openly choose between them" (Matter of Lincoln v Lincoln, 24 NY2d at 272; accord Matter of Casarotti v Casarotti, 107 AD3d 1336, 1338-1339 [2013], lv denied 22 NY3d 852 [2013]; see Matter of Sellen v Wright, 229 AD2d at 681-682).  We address this issue recognizing that, in the course of practice, confusion may have resulted from the different procedure followed during Family Ct Act article 10 proceedings, in which the presence of the parties' counsel during an in camera interview with a child may be permissible due to the fundamental right of litigants in such proceedings to confront their accusers.  Although these interviews have sometimes been inaccurately referred to as Lincoln hearings, they are conducted for entirely different purposes than the confidential interviews conducted during custody and visitation proceedings (see Matter of Justin CC. [Tina CC.], 77 AD3d 207, 210-211 [2010]).  For the court to fulfill its primary responsibility of protecting the welfare and interests of a child in the context of a Family Ct Act article 6 proceeding, protecting the child's right to confidentiality remains a paramount obligation (see Matter of Lincoln v Lincoln, 24 NY2d at 271-272).

Lahtinen, J.P., Rose and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court