Matter of BB. Z. v CC. AA. (2018 NY Slip Op 07986)





Matter of BB. Z. v CC. AA.


2018 NY Slip Op 07986


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

524266

[*1]In the Matter of BB. Z., Appellant,
v
CC. AA., Respondent. (Proceeding No. 1.) (And Four Other Related Proceedings.)
In the Matter of CC. AA., Respondent,
v
BB. Z., Appellant. (Proceeding No. 3.)

Calendar Date: October 12, 2018

Before: Garry, P.J., Devine, Clark, Aarons and Pritzker, JJ.


Timothy S. Brennan, Schenectady, for appellant.
CC. AA., respondent pro se.
Rappazzo & Bauscher, PLLC, Schenectady (Rebecca M. Bauscher of counsel), attorney for the child.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered November 29, 2016, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, for permission to relocate with the parties' child.
BB. Z. (hereinafter the mother) and CC. AA. (hereinafter the father) are the parents of a child (born in 2009). Pursuant to a December 2015 order, the father had sole legal and primary physical custody of the child and the mother had parenting time with the child once a week. In January 2016, the mother commenced the first of these proceedings seeking to enforce the parenting time provisions set forth in the December 2015 order. A few days later, the father was the victim of a violent attack and, as a result of ongoing safety concerns, he relocated with the child to a nearby state. Following the attack, the mother filed a modification petition alleging that the child was not safe in the father's care and requesting primary physical custody of the child. The father, in turn, filed a modification petition requesting permission to relocate with the child and a reduction of the mother's parenting time to once a month.
In July 2016, the mother filed a second enforcement petition alleging, among other things, that she had seen the child only three times since the father's relocation. Family Court thereafter conducted a fact-finding hearing, at which both the mother and the father testified. At the conclusion of the fact-finding hearing, Family Court reserved decision and, while the parties were awaiting Family Court's decision and order, the mother filed two more petitions to enforce the parenting time provisions in the December 2015 order. By a decision and order entered in November 2016, Family Court, among other things, granted the father permission to relocate, reduced the mother's parenting time to every other week, dismissed the mother's modification petition and, with respect to the mother's enforcement petitions, granted the mother make-up time for previously missed parenting time. The mother now appeals, arguing that Family Court's determination to permit the father to relocate with the child is not supported by a sound and substantial basis in the record and that Family Court should have instead awarded her primary physical custody of the child.
It is well settled that a custodial parent's proposed relocation provides the change in circumstances that is ordinarily necessary to modify an existing custody order (see Matter of Perestam v Perestam, 141 AD3d 757, 757-758 [2016]; Matter of Gates v Petosa, 125 AD3d 1161, 1161 [2015]; Matter of Batchelder v BonHotel, 106 AD3d 1395, 1396 [2013]). The parent seeking to relocate bears the burden of demonstrating, by a preponderance of the evidence, that the proposed relocation is in the child's best interests (see Matter of Hammer v Hammer, 163 AD3d 1208, 1209 [2018]; Matter of Barner v Hampton, 132 AD3d 1098, 1099 [2015]). A determination as to the best interests of the child involves consideration of a variety of factors, including "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]; accord Matter of Adams v Bracci, 91 AD3d 1046, 1047 [2012], lv denied 18 NY3d 809 [2012]).
At the fact-finding hearing, the father testified that he was violently attacked in January 2016 outside the presence of the child and that, because of his involvement in the criminal prosecution of his assailant, his assailant and the assailant's associates posed an ongoing threat to him and, by extension, the child. The father stated that, as a result, he no longer felt safe living in or visiting the area. He testified that, since relocating with the assistance of a local District Attorney's office, he had secured adequate housing for himself and the child, obtained gainful employment and enrolled the child in a new school, where she had successfully finished [*2]out the remainder of the school year. The father also stated that, in their new location, he and the child had a large support system — a factor that Family Court reasonably found to be an emotional enhancement to the child's life (see Matter of Lori DD. v Shawn EE., 100 AD3d 1305, 1307 [2012]; Matter of Weber v Weber, 100 AD3d 1244, 1247 [2012]).
Like the father, the mother expressed concern for the child's safety, but she opposed the father's relocation with the child, stating that the father had brought the danger upon himself, and she requested primary physical custody of the child. However, the evidence established that the mother's living situation had not changed since entry of Family Court's December 2015 order, which was entered following a fact-finding hearing. Indeed, the mother's testimony demonstrated that she continued to live with her significant other, a registered level two sex offender who, pursuant to the December 2015 order, could not be present during the mother's parenting time with the child. Furthermore, the record established that the father had been the child's primary caretaker for nearly her entire life and that, as found by Family Court, the mother had "often foregone meaningful participation in the child's care." Finally, as recognized by Family Court, the distance between the mother's home and the father's new home was not so prohibitive that the mother's parenting time with the child had to be severely curtailed, and the court's order directed the father to bear the personal and financial responsibility of arranging for the child's transportation to and from the mother's biweekly parenting time. Under all of these circumstances, we find a sound and substantial basis in the record to support Family Court's determination that the child's best interests would be served by permitting the father to relocate out of state with the child, rather than awarding the mother primary physical custody (see Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005-1007 [2018], lv denied 31 NY3d 909 [2018]; Matter of Hoffman v Turco, 154 AD3d 1136, 1137-1139 [2017]; Matter of Cole v Reynolds, 110 AD3d 1273, 1274-1276 [2013]). Accordingly, we find no basis to disturb Family Court's determination.
Garry, P.J., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.