Matter of Kristen MM. v Christopher LL. (2020 NY Slip Op 02138)





Matter of Kristen MM. v Christopher LL.


2020 NY Slip Op 02138


Decided on April 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 2, 2020

528133

[*1]In the Matter of Kristen MM., Respondent,
v
Christopher LL., Appellant. (And Another Related Proceeding.)

Calendar Date: February 13, 2020

Before: Garry, P.J., Lynch, Mulvey, Aarons and Reynolds Fitzgerald, JJ.


Sandra M. Colatosti, Albany, for appellant.
Elena Defio Kean, Albany, for respondent.
Veronica Reed, Schenectady, attorney for the children.



Lynch, J.
Appeals from two amended orders of the Family Court of Schenectady County (Blanchfield, J.), entered November 28, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of twins, a son and a daughter (born in 2008). In 2014, the parties, by an agreement that was incorporated into an order of custody and visitation, agreed for the mother to retain sole legal and physical custody of the children, with the father having visitation on alternating weekends through the 2013-2014 and 2014-2015 school years. The agreement further provided that, if the father had a consistent and positive presence in the children's lives during this period, he could petition for joint legal custody of the children. In December 2016, the mother commenced the first proceeding seeking permission to relocate with the children to Arizona. In February 2018, the father commenced the second proceeding seeking to modify the order of custody and visitation by awarding him joint legal and physical custody of the children. Following fact-finding and Lincoln hearings, Family Court issued an amended order granting the mother's petition and dismissing the father's petition, finding that the relocation to Arizona was in the children's best interests. The court then issued a second amended order, providing, among other things, that, upon the relocation, the father shall have parenting time in New York for two weeks during the children's summer vacation and in alternating years during Christmas break and mid-winter recess. The father appeals.[FN1]
The father contends that Family Court's determination to grant the mother's petition to relocate with the children and to dismiss his petition lacks a sound and substantial basis in the record. "The custodial parent's proposed relocation provides the change in circumstances that is ordinarily necessary to modify an existing custody order" (Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1341 [2019] [internal quotation marks and citations omitted]; accord Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [2019]). "The parent seeking to relocate bears the burden of demonstrating, by a preponderance of the evidence, that the proposed relocation is in the child[ren]'s best interests" (Matter of BB.Z. v CC.AA., 166 AD3d 1334, 1335 [2018] [citations omitted]; see Matter of Turner v Turner, 166 AD3d 1339, 1339 [2018]). "In assessing the best interests of the children, a court must consider a variety of factors, including, but not limited to, each parent's reasons for seeking or opposing the move, the quality of the relationships between the children and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the children's future contact with the noncustodial parent, the degree to which the custodial parent's and children's lives may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and children through suitable visitation arrangements" (Matter of Hoppe v Hoppe, 165 AD3d 1422, 1423-1424 [2018] [internal quotation marks, brackets and citations omitted], lv denied 32 NY3d 912 [2019]; see Matter of Hammer v Hammer, 163 AD3d 1208, 1209 [2018]).
At the fact-finding hearing, the mother testified that she has been the primary caretaker of the children. According to the mother, the father left her while she was pregnant, and only a year after the children were born, the parents briefly reconciled. In 2009, the parents separated, and the children again did not have contact with the father until early 2014, when they accidentally ran into him outside a store. After the parents entered into an agreement in the spring of 2014, the father was sporadically present in the children's lives. He had contact with the children through the spring of 2015 and then again did not have any contact with the children until August 2016. The father was then present in the children's lives for about two months before ceasing contact because the parents had a disagreement. The father resumed contact with the children in April 2017 and remained in contact for about two months, until the parents had another disagreement. The father then had no contact with the children until January 2018, when he resumed and continued visitation throughout these proceedings.
As to providing care for the children, the mother testified that she has been financially supporting the children through her employment as a therapeutic worker and took care of their day-to-day activities, as well as their medical and educational needs. According to the mother, the father has not been financially supporting the children, has been inconsistent with paying child support and has not been significantly engaged in the children's day-to-day activities or family holidays. The mother also stated that, although the father had recently resumed visitation, the children do not enjoy going. She expressed her concern that the children have a negative relationship with the children of father's girlfriend, with whom the father resided. The mother asserted that she has tried to facilitate the relationship between the father and the children and had not denied the father contact or visitation with the children when he "comes back around." As to relocation to Arizona, the mother testified that she sought to move to Arizona with the children in order to continue her education and attain a Bachelor's degree and have better living conditions. According to the mother, she would be living with her friend, rent free in the friend's five-bedroom home, along with the friend's nine-year-old son. Previously, the friend's family shared a residence with the mother and the children in Schenectady County. The mother also believes that the children will receive a better education in the Arizona school district. She researched the school that the children would attend in Arizona and inquired as to the necessary transfer arrangements. Further, the mother stated that she researched and determined that the dry air in Arizona would be better for the son's asthma and found a treatment provider in Arizona. She further testified that she would look for a part-time job in Arizona and that she was willing to pay for the children's travel expenses to see the father. Two of the mother's sisters testified that, throughout the children's lives, the father has not been involved and the mother has served as the primary caregiver for the children. One of the sisters also stated that she had never seen the mother speak negatively of the father or discourage the children from visiting him.
The father testified that he believes that he had been actively engaged in the children's lives and wants to continue that engagement. The father denied not communicating with the children for long periods of time and not being involved in holidays with the children, explaining that he conducted his "own birthdays and holidays" with the children. The father also testified that the relationship between the children and his girlfriend's children was "good." The father did not consent to the children moving to Arizona and expressed his concerns that if the children move away, he would lose their relationship.
As to the best interests of the children, Family Court emphasized the father's unstable presence in the children's lives and that the relocation could provide the children with a stable living environment. The record supports the court's determination that the relocation is in the children's best interests, as the mother has been the primary caretaker for the children, including taking care of their educational and medical needs, as well as holidays and extracurricular activities, while the father has been sporadically present in their lives — being absent for years at a time — and has not provided stable financial or emotional support (see Matter of Adam OO. v Jessica QQ., 176 AD3d 1418, 1420 [2019]; Matter of Hoffman v Turco, 154 AD3d 1136, 1138 [2017]; Matter of Perestam v Perestam, 141 AD3d 757, 759 [2016]). As to the visitation schedule — which provides the father with two weeks of summer and alternating Christmas and winter recess — the court found that "the children will likely benefit from a more structured, consistent, and substantial visitation schedule with the father, as it would require the parties to accommodate and prepare for out-of-state travel." The court also ordered the mother, among other things, to ensure that the father is afforded liberal contact with the children through electronic means, including one phone/video call each evening, and to cover the children's traveling expenses to visit the father. We find that the fashioned visitation schedule, which provides more stable and predictable parenting time with the father for the children, preserves the relationship between the father and the children (see Matter of Spaulding v Stewart, 124 AD3d 1111, 1113 [2015], lv denied 25 NY3d 903 [2015]; Matter of Cole v Reynolds, 110 AD3d 1273, 1276 [2013]). Based on the foregoing, and according deference to the court's credibility assessments, a sound and substantial basis exists in the record to support the court's determination to grant the mother's petition to relocate with the children, and, accordingly, dismiss the father's modification petition (see Matter of Adam OO. v Jessica QQ., 176 AD3d at 1420; Matter of Michael BB. v Kristen CC., 173 AD3d at 1313).
Garry, P.J., Mulvey, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the amended orders are affirmed, without costs.



Footnotes

Footnote 1: The father's notice of appeal states that he is appealing from "the [o]rder of Family Court" entered on November 28, 2018. Both amended orders were entered on November 28, 2018 and, on appeal, the father is challenging both the grant of the mother's petition and the dismissal of his petition in the first order, as well as the determination as to his parenting time in the second order. Thus, we construe father's notice of appeal as an appeal from both amended orders (see CPLR 5520 [c]; Matter of Mark WW. v Jennifer B., 158 AD3d 1013, 1015 n 2 [2018]).