Garry, J.
Appeals (1) from an order of the Family Court of *1070 Cortland County (Campbell, J.), entered April 8, 2011, which, among other things, granted respondent’s application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody, and (2) from an order of said court, entered April 8, 2011, which, among other things, granted petitioner’s application, in proceeding No. 4 pursuant to Family Ct Act article 6, for custody of the parties’ child.
Kimberly Bush (hereinafter the mother) has three children (born in 1997, 2000 and 2003). Respondent Teddy Bush III is the father of the two older children, and petitioner Adelbert Samuel Bush II is the father of the youngest child. In April 2003, Family Court (DiStefano, J.) issued an order granting joint custody of the two older children to their father and the mother, with physical placement to the mother in Tennessee. In October 2010, the mother initiated proceedings seeking to hold the father of the older children in violation of the April 2003 order, and seeking modification of that order. The father of the older children cross-petitioned for modification. In November 2010, the father of the youngest child commenced proceedings seeking custody of his child, and the mother cross-petitioned for the same relief. Following a fact-finding hearing and a Lincoln hearing with the older children, Family Court (Campbell, J.) dismissed the mother’s petitions, granted the fathers’ petitions and awarded sole custody of the older children to their father and sole custody of the youngest child to her father. The mother appeals.
Initially, the attorneys for the children contend that this Court should decline jurisdiction on the ground that all of the children now reside in Tennessee with their respective fathers pursuant to Family Court’s orders, while the mother — a New York resident when these proceedings were commenced — allegedly no longer resides in this state. However, the claim that the mother has left New York is made solely in the briefs, is not included in the record and is thus beyond our consideration (see Birr v Birr, 70 AD3d 1221, 1223 [2010]). Family Court determined at the first appearance that it had jurisdiction over these proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A), and thereafter retains exclusive continuing jurisdiction until a court determines otherwise (see Domestic Relations Law § 76-a [1]; Matter of Hissam v Mancini, 80 AD3d 802, 803 [2011], lv dismissed and denied 16 NY3d 870 [2011]).
We will not disturb Family Court’s award of sole custody of the two older children to their father. The requisite change in circumstances was established by, among other things, the *1071 mother’s acknowledged drug abuse in Tennessee, her unilateral relocation in 2009 with the children to New York — which substantially increased the travel required for visitation — and her subsequent arrest and incarceration (see Matter of Nephew v Nephew, 45 AD3d 1194, 1195 [2007]; Matter of Robertson v Robertson, 40 AD3d 1219, 1220 [2007]; Matter of Gregio v Rifenburg, 3 AD3d 830, 831-832 [2004]). In determining what custodial arrangement would serve the children’s best interests, the court was required to evaluate such relevant factors as “the relative fitness, stability, past performance, and home environment of the parents, as well as their ability to guide and nurture the children and foster a relationship with the other parent” (Matter of Arieda v Arieda-Walek, 74 AD3d 1432, 1433 [2010] [internal quotation marks and citation omitted]; see Matter of Wilson v Hendrickson, 88 AD3d 1092, 1094 [2011]). The court noted that the father of the older children owns his residence in Tennessee, that he and his live-in paramour have steady jobs, and that neither has a criminal record or any history of child protective involvement. Further, the older children have lived in Tennessee for most of their lives, have positive relationships there with the paramour, their paternal grandmother and others, and are doing well socially and academically in their Tennessee school.
By contrast, the mother is unemployed, and her lifestyle is so unstable that the older children attended three different school districts in six months while residing with her in New York. Family Court found that the mother has interfered with the older children’s relationship with their father by, among other things, twice unilaterally relocating to another state. A caseworker testified that a child protective report was indicated against the mother and her fiancé for inadequate guardianship of the children, and there was testimony that the mother and her fiancé bought and sold drugs while the children resided with them in Tennessee and that the children were repeatedly exposed to drug abuse and domestic violence. The mother and her fiancé acknowledged that they both have criminal records, formerly used illegal drugs, and left Tennessee while open criminal matters were pending there against each of them. As a consequence of one of these unresolved matters, the mother was arrested by bounty hunters in front of the children.
The mother claimed that she no longer uses illegal drugs, that no domestic violence had occurred, and — contrary to the father’s testimony — that she told him about her 2009 move to New York and facilitated contact between him and his children thereafter. However, according deference to Family Court’s cred *1072 ibility assessments, we find a sound and substantial basis in the record for its determinations that joint custody is no longer feasible, and that the older children’s best interests are served by granting sole custody to their father (see Matter of Michael GG. v Melissa HH., 97 AD3d 993, 995 [2012]; Matter of Coley v Sylva, 95 AD3d 1461, 1462-1463 [2012]; Matter of Keefe v Adam, 85 AD3d 1225, 1226-1227 [2011]).
As Family Court noted, the custody determination as to the youngest child is more difficult because of her father’s status as a convicted sex offender and the lack of a well-established parental relationship. Before the youngest child’s birth, her father pleaded guilty to a charge of statutory rape arising out of a 2001 incident. He has no prior or subsequent history of crimes or sexual misconduct. He did not complete sex offender treatment following this conviction, but testified that he was willing to obtain such treatment if Family Court so directed. Family Court found that the lack of contact between the youngest child and her father resulted, in part, from the mother’s elimination of their visits shortly after his release from jail. Notably, the mother did this based upon her fiancé’s objections, not due to any concern about the father’s past. The father of the youngest child testified that the mother does not communicate with him and that, following her termination of his visits, he maintained contact by means of occasional visits at a relative’s home without the mother’s knowledge. However, he and his wife testified that the youngest child’s relationship with them recently improved after they cared for her during the mother’s 2010 incarceration. Factors favoring the father of the youngest child include his stable lifestyle, his steady job with the same farm employer for most of the past 10 years and his regular payment of child support. He and his wife — who holds a full-time job, was honorably discharged from the military and has no criminal record — own a three-bedroom home; the wife testified that the father was honest with her about the nature of his criminal conviction and that she does not believe he poses any threat to the youngest child.
The mother denies that she thwarted contact between the youngest child and her father, contending that he chose not to have contact with the child after his marriage, and she points out that the youngest child has lived with her for most of her life. In this initial custody determination, this informal arrangement by the parties is merely one factor — the governing standard is the child’s best interests (see Matter of Roberta GG. v Leon HH., 99 AD3d 1057, 1058 [2012]). There was favorable testimony from a teacher that, while residing with the mother, *1073 the youngest child attended school regularly and was usually clean and well-rested. There was also testimony, however, that the youngest child fears the mother’s fiancé because he “hurt her mommy,” that she has demonstrated to relatives how the mother and fiancé would roll up a dollar bill and use it to snort white powder into their noses, and that she said that the mother and fiancé told her not to tell caseworkers about their drug abuse.
As to the mother’s claim that the youngest child has a strong bond with her older siblings and should not be separated from them, the general rule that “siblings should be kept together if possible . . . has become more complicated due to changing family dynamics” (Matter of Tavernia v Bouvia, 12 AD3d 960, 962 [2004]; accord Matter of Williams v Williams, 66 AD3d 1149, 1152 [2009]). Here, the youngest child’s father testified that he supports her relationship with her older siblings. As both fathers reside in Tennessee, that relationship may be better facilitated by placement of the youngest child with her father than with the mother. As Family Court noted, neither the mother nor the father of the youngest child is an ideal parent; both have shortcomings and have sometimes demonstrated poor judgment. Nonetheless, considering the record as a whole, we find no reason to disturb Family Court’s decision awarding sole custody to the youngest child’s father (see Matter of Danielle TT. v Michael UU., 90 AD3d 1103, 1104 [2011]; Matter of Baker v Baker, 82 AD3d 1462, 1462-1463 [2011]; Matter of Maheu v Bowen, 26 AD3d 654, 655 [2006]).
Mercure, J.E, Spain and McCarthy, JJ., concur. Ordered that the orders are affirmed, without costs.