Matter of Mark WW. v Jennifer B. (2018 NY Slip Op 01229)





Matter of Mark WW. v Jennifer B.


2018 NY Slip Op 01229


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

524058

[*1]In the Matter of MARK WW., Respondent,
v
JENNIFER B., Appellant. (Proceeding No. 1.)
In the Matter of LOGAN WW. and Others, Alleged to be Neglected Children. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JENNIFER B., Appellant. (Proceeding No. 2.) (And Five Other Related Proceedings.)

Calendar Date: January 11, 2018

Before: Garry, P.J., Egan Jr., Lynch, Devine and Clark, JJ.


Lisa K. Miller, McGraw, for appellant.
Tracy Steeves, Kingston, for Mark WW., respondent.
Stacy L. Banewicz, Cortland County Department of Social Services, Cortland, for Cortland County Department of Social Services, respondent.
Natalie B. Miner, Homer, attorney for the children.


Devine, J.

MEMORANDUM AND ORDER
Appeals (1) from an order of the Family Court of Cortland County (Campbell, J.), entered October 20, 2016, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to modify a prior order of custody, and (2) from an order of said court, entered November 14, 2016, which granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Petitioner Mark WW. (hereinafter the father) and respondent (hereinafter the mother) are the parents of three children (born in 2008, 2009 and 2010). They are also no strangers to Family Court, which, pursuant to the mother's petition to modify the existing custodial arrangement, issued an order of protection in January 2015 that directed the father to stay away from the mother and have no contact with her. Family Court subsequently issued an order that modified the custody arrangement to award the mother sole legal and physical custody of the children and the father specified visitation, with the custodial exchanges to be handled via a relative. Upon the father's appeal from both orders, we affirmed (Matter of Jennifer WW. v Mark WW., 143 AD3d 1063, 1064 [2016]).
In February 2016, the mother was assaulted by her boyfriend within sight and/or earshot of the children. The boyfriend resumed living with them in short order, prompting the present proceedings. In proceeding No. 1, the father sought to modify the 2015 custody order and obtain sole custody of the children. Petitioner Cortland County Department of Social Services (hereinafter DSS) then commenced proceeding No. 2 alleging neglect on the part of the mother [FN1]. DSS also obtained a temporary order directing the mother to remain in Cortland County except in limited circumstances, to prevent the children from having any contact with the boyfriend and to engage with a nearby domestic violence assistance program.
Family Court conducted a fact-finding hearing and determined that the mother had neglected the children. A dispositional hearing was then conducted that included consideration of the various petitions filed by the mother and the father, including the father's custody modification petition. Following that hearing, Family Court, by order entered in October 2016, among other things, granted the father's petition to modify custody, awarded the father sole custody of the children and awarded the mother set visitation. In November 2016, Family Court issued an order of fact-finding and disposition adjudicating the children to be neglected by the mother and ordering that the mother comply with an order of protection prohibiting contact between the children and the boyfriend. The mother now appeals from both orders.[FN2]
In order to establish neglect, DSS was obliged to "show, by a preponderance of the evidence, first, that [the] child[ren]'s physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child[ren] is a consequence of the failure of the parent . . . to exercise a minimum degree of care in providing the child[ren] with proper supervision or guardianship" (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004] [internal citation omitted]; see Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1095 [2017]). To "determin[e] whether a parent or guardian has failed to exercise a minimum degree of care, the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Cori XX. [Michael XX.], 145 AD3d 1207, 1208 [2016] [internal quotation marks and citations omitted]; see Matter of Jade F. [Ashley H.], 149 AD3d 1180, 1181 [2017]).
The children saw or overheard an incident at the family residence in February 2016 in which the boyfriend beat the mother with enough force to bloody her, knocked out three of her teeth and smashed a television and a window with a space heater. Family Court credited testimony, disputed by the mother, that the children were afraid of the boyfriend after this episode and did not want any contact with him. DSS did not, however, impermissibly base its claims of neglect upon this single instance of the children witnessing domestic abuse against the mother (see Nicholson v Scoppetta, 3 NY3d at 368; Matter of Anthony FF. [Lisa GG.], 105 AD3d 1273, 1274 [2013]). The February 2016 incident was only the latest reason for concern about the boyfriend and his behavior around children, beginning with a 2011 indicated child protective report and criminal charges relating to his infliction of excessive corporal punishment upon an ex-girlfriend's child. The boyfriend had harassed and threatened others in front of children during his relationship with the mother, including incidents in which he threatened to kill a neighbor and menaced another parent at the children's school. His relationship with the mother was also tempestuous, with law enforcement repeatedly called to the family residence to deal with domestic disputes from 2014 onward.
Notwithstanding this persistent and ominous conduct by the boyfriend, when the order of protection issued in the wake of the February 2016 incident was modified to allow contact between him and the mother, she permitted him to move back into the family residence without concern for the effect that might have upon the children [FN3]. Indeed, far from grappling with the problematic behaviors of the boyfriend and the mother's problematic desire to remain with him, the mother declined offered preventive services and explored moving with the boyfriend to another state so that they could evade the terms of the order of protection altogether. The mother presented some conflicting proof but, according deference to Family Court's assessment of credibility, the foregoing provides ample support for its finding of neglect (see Matter of Heyden Y. [Miranda W.], 119 AD3d 1012, 1013-1014 [2014]; Matter of Anthony FF. [Lisa GG.], 105 AD3d at 1274; Matter of Xavier II., 58 AD3d 898, 899 [2009]).
Turning to the award of sole custody to the father, the domestic tumult at the mother's [*2]residence and its impact upon the children indisputably constituted a change in circumstances since the entry of the 2015 custody order that warranted an inquiry into the children's best interests (see Matter of William EE. v Christy FF., 151 AD3d 1196, 1197-1198 [2017]). The "factors relevant to determining whether a modification will serve the child[ren's] best interests include each parent's relative fitness and past parenting performance, the duration of the prior custody arrangement, the child[ren's] wishes, the respective home environments, including the existence of domestic violence, and the likelihood of each parent to foster a relationship between the child[ren] and the other parent" (Matter of Kevin F. v Betty E., 154 AD3d 1118, 1120 [2017] [internal quotation marks and citations omitted]; see Matter of Tracey L. v Corey M., 151 AD3d 1209, 1211 [2017]).
The children had resided with the mother since she and the father split up and, while the children's desire to continue that arrangement was relevant, it was not dispositive (see Matter of Garcia v Zinna, 149 AD3d 1185, 1186 [2017]). There was some evidence in the mother's favor by the time of the dispositional hearing, as she was engaging in mandated preventative services and keeping the children away from the boyfriend. These developments were far outweighed by the fact that the mother had married the boyfriend — who had not accepted responsibility for his actions and had fallen out of compliance with recommended mental health and anger management treatment — prior to the end of the dispositional hearing. The mother's DSS caseworker confirmed that the mother still failed to see the risk that the boyfriend posed to the children and, indeed, the mother testified that she did not know if preventive services were needed and that it did not "really matter" to her whether she received them in the future. The mother also had no interest in facilitating a relationship between the children and the father, consistently refusing to produce the children for visitation as required and even attempting to withhold the name of their doctor from the father at the dispositional hearing. Her antipathy for the father expressed itself in other ways as well, such as engaging in what Family Court accurately categorized as "relentless" efforts to engineer incidents in which the father would violate the order of protection entered in the mother's favor.
Family Court was well aware that the father and the mother had been in a relationship marked by "significant domestic violence" (see Matter of Jennifer WW. v Mark WW., 143 AD3d at 1064-1065). That being said, the father testified that he took domestic violence classes — a term of probation that he completed in the wake of that relationship — and that he had not thereafter engaged in similar behavior. The father also had maintained employment and, while his living situation was not ideal for a custodial parent, he testified that it would be workable in the short term and that he would quickly obtain more appropriate lodging. In short, although there were reasons for concern in placing the children in the father's care, they paled in comparison to the disregard that the mother had already shown for the children's safety and her unwillingness to foster a relationship between them and the father. Family Court found as much and, according deference to its credibility assessments, a sound and substantial basis in the record supports its determination to grant sole legal and physical custody of the children to the father (see Matter of Clark v Hart, 121 AD3d 1366, 1369 [2014]; Matter of Bush v Bush, 104 AD3d 1069, 1071-1072 [2013]).
Garry, P.J., Egan Jr., Lynch and Clark, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: DSS also filed a neglect petition against the boyfriend that, while not at issue here, ended with an adjudication of neglect against him.

Footnote 2: The notice of appeal is explicitly taken from the October 2016 order but states an intent to appeal from the resolution of all pending petitions, including the adjudication of neglect against the mother, and was filed in a timely manner with regard to both the October 2016 and November 2016 orders. Her brief asserts that she appealed from, and raises arguments with regard to, both orders. It therefore appears that "the notice of appeal contains an inaccurate description of the actual order or orders appealed from" and, in the absence of any prejudice or objection, we will exercise our discretion to deem the appeal as having been taken from both orders (Matter of Johnson v Johnson, 279 AD2d 814, 815 n [2001], lv denied 96 NY2d 715 [2001]; see Family Ct Act § 1118; CPLR 5520 [c]).

Footnote 3: The mother testified that she did not ask for any changes to the terms of the order of protection, but the record reflects that the order would not have been modified without her consent.